183 N.J. Super. 310 (1982)
443 A.2d 1096
B.J.I. CORP., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
LARRY W. CORP., A CORPORATION OF THE STATE OF NEW JERSEY; STATE OF NEW JERSEY; GEORGE C. BARILE AND THERESA J. BARILE, HUSBAND AND WIFE; AND CHARLES ELIN, INDIVIDUALLY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Somerset County.
Decided January 14, 1982.
*313 Peter G. Sheridan on motion for plaintiff (McCarthy & Hicks, attorneys).
Vincent T. Bisogno on motion for defendants Barile (Bisogno & Loeffler, attorneys).
DREIER, J.S.C.
This case comes before the court on cross-motions for summary judgment. Plaintiff B.J.I. Corp. seeks to foreclose the $105,000 mortgage it holds on two lots,[1] shown on a map as "Ivy Hill" in Hillsborough Township, which are owned by defendant Larry W. Corp. George and Theresa Barile, also named defendants in this action, hold a docketed judgment in the amount of $21,700 recovered in an earlier Chancery Division action against Larry W. Corp.
The sole remaining issue here is one of priority:[2] both B.J.I. Corp. and the Bariles assert that their interest in the mortgaged premises is superior to the other's claim, and both seek a declaration to this effect. The resolution of this apparently straightforward issue, however, requires a reconsideration of New Jersey's lis pendens statute, N.J.S.A. 2A:15-6 et seq., in light of recent decisions dealing with its constitutionality, and a determination of the validity and scope of a general subordination clause in a residential real estate sales contract.
A brief chronology of events will be helpful.
In September 1978 George and Theresa Barile entered into a contract with American Dream Builders Group (American Dream) for the purchase of a lot in "Ivy Hill" on which *314 American Dream agreed to construct a single-family home. The contract was never recorded, despite a provision therein expressly appointing each party agent for the other for the purposes of recording and filing the contract in the event of a dispute or repudiation.
In December of the same year American Dream informed the Bariles that it was cancelling the contract and would return the Bariles' deposit of $7,100. The deposit was returned to the Bariles' attorney in February 1979. Because the Bariles at that time were considering bringing suit against American Dream for specific performance of the contract, the refund check was deposited in their attorney's account, in trust for them.
On March 30, 1979 the Bariles filed suit against American Dream and against Larry W. Corp. as well, since investigation revealed that the land which the Bariles had contracted to purchase, and on which their home was to be built, was in fact owned by Larry W. Corp. The Bariles' complaint, alleging that Larry W. Corp. was an agent and affiliate of American Dream, sought specific performance of the contract to construct a home, conveyance of the lot in question to the Bariles or the declaration of a constructive trust in their favor as to the property described in the contract, and damages for breach of the contract.
On May 25, 1979 the Bariles filed a notice of lis pendens.
On June 19, 1979 Larry W. Gardner, registered agent for both American Dream and Larry W. Corp., was personally served with the summons and complaint.
On June 26, 1979 Larry W. Corp. executed a $105,000 mortgage to B.J.I. Corp., whose president and principal is Larry W. Gardner. This mortgage covered three lots in the "Ivy Hill" development, one of them the lot which was the subject of the *315 Bariles' action for specific performance.[3] On July 3, 1979 B.J.I. Corp. recorded its mortgage.
By the fall of 1979 the Bariles had determined that they could not wait the year or more it would apparently take for the resolution of their suit, the conveyance of the property to them and the construction of a home. As a result, they closed title on another home in October 1979, at which time the deposit previously refunded by American Dream and held in trust for them by their attorney was released to the Bariles.
On December 12, 1979 the Bariles took a default judgment in their suit against American Dream and Larry W. Corp., recovering $21,700. An abstract of judgment was filed on December 20, 1979.
On May 4, 1981 B.J.I. Corp. brought this foreclosure action against Larry W. Corp., naming the Bariles as defendants by reason of their notice of lis pendens and subsequent judgment.

I
The first issue to be resolved is the validity of the Bariles' notice of lis pendens. Once a notice of lis pendens is filed, it "serves as constructive notice to the world that an action involving real property is pending, so that any subsequent purchaser or lienor of that property will take subject to the outcome of the litigation." United S. & L. Ass'n v. Scruggs, 181 N.J. Super. 52, 54 (Ch.Div. 1981), interpreting N.J.S.A. 2A:15-7. Under this section of the New Jersey lis pendens statute[4] the Bariles' judgment, recovered against American Dream and Larry W. Corp., would take precedence over B.J.I. Corp.'s mortgage.
*316 To overcome this obstacle, and in support of the motion for summary judgment declaring its mortgage superior to the Bariles' judgment, B.J.I. Corp. argues that the Bariles' initial filing of the notice of lis pendens was void since the primary object of their suit was money damages. B.J.I. Corp. cites N.J.S.A. 2A:15-6 which provides:
In every action ... the object of which is to enforce a lien ... or to affect the title to real estate or a lien or encumbrance thereon, plaintiff or his attorney shall, after the filing of the complaint, file ... a written notice of the pendency of the action, which shall set forth the title and the general object thereof, with a description of the affected real estate.
No notice of lis pendens shall be filed under this article in an action to recover a judgment for money or damages only.
Garfield v. Elmwood Stores, 17 N.J. Super. 513 (Ch.Div. 1952); Grabowski v. S. & N. Constr. Co., Inc., 72 N.J. Super. 1 (Ch.Div. 1962).
Although title to the lot was in Larry W. Corp., the Bariles' contract was with American Dream only. Thus, plaintiff argues, there could be no legitimate claim for specific performance to convey the property as against Larry W. Corp. In addition, because American Dream was never in the chain of title, the Bariles' suit on the contract with American Dream could not "affect the title to real estate" as required by N.J.S.A. 2A:15-6.
In the alternative, B.J.I. Corp. argues that when the Bariles abandoned their claim for specific performance by taking a default judgment against Larry W. Corp., this operated as an election of money damages as an exclusive remedy. Thus the Bariles waived any interest they may have had in the real property itself, and are estopped from asserting any rights claimed under their notice of lis pendens.
In response, and in support of their cross-motion for summary judgment, the Bariles allege that Larry W. Gardner, as principal of the mortgagee B.J.I. Corp., and as registered agent of American Dream and Larry W. Corp., had actual notice of their suit seven days before B.J.I. Corp. took the mortgage from Larry W. Corp. Since its principal knew of the existence of litigation affecting the subject property, the Bariles argue that *317 B.J.I. Corp. must be charged with the same knowledge; thus the sufficiency of the notice of lis pendens is immaterial. Wood v. Price, 79 N.J. Eq. 620, 623 (E. & A. 1911); Thatelbaum v. Neidorf, 100 N.J. Eq. 236 (Chan. 1926).
Larry W. Gardner denies such actual knowledge of the Bariles' suit.[5] The question of actual notice would become relevant, however, only if the Bariles' notice of lis pendens is found to be invalid. To the contrary, this court finds the Bariles' initial filing of the notice of lis pendens to be valid, and further that its validity was not defeated nor its protection diminished by the later abandonment of their claim for specific performance.

A
The Bariles had a legitimate claim for specific performance against American Dream and Larry W. Corp. jointly. The contract between the Bariles and American Dream provided for more than the construction of a home. American Dream expressly agreed to sell, and the Bariles to buy, the real property described therein, and the contract itself specified that "possession will be given by delivery of Deed."[6] Nor was their claim *318 for specific performance included as mere surplusage in the complaint. The primary relief they sought was the construction of a residence and conveyance of the property, as called for in the contract. Such relief was actively pursued for many months until it became clear that satisfactory resolution of their claim, culminating in conveyance of the "Ivy Hill" lot and completion of construction of their new home, would take at least another year. It was only then that the Bariles abandoned their claim for specific performance by purchasing another home.
The Bariles notice of lis pendens, therefore, was not filed initially "in an action to recover a judgment for money or damages only," thereby violating the strictures of the lis pendens statute; rather it was properly grounded in an "action ... the object of which is to ... affect the title to real estate ..." N.J.S.A. 2A:15-6 [emphasis supplied]. Further, when such a notice of lis pendens is filed, based as this was on a legitimate claim to the relief of specific performance of a contract to convey real property, its effectiveness will not be defeated should the plaintiff later make a reasoned choice to abandon the claim under which the notice was properly filed, after diligently prosecuting such claim over a period of many months.[7]

*319 B
The determination that the Bariles' filing of a notice of lis pendens was valid under N.J.S.A. 2A:15-6 resolves the issue of the priority of their judgment. Any doubts as to the constitutionality of the New Jersey lis pendens statute have been put to rest by the recent decision of the Third Circuit Court of Appeals in Chrysler Corp. v. Fedders Corp., 670 F.2d 1316 (3rd Cir.1982). This decision reversed the District Court's holding in the same case, reported in 519 F. Supp. 1252 (D.N.J. 1981), which found the New Jersey lis pendens statute inadequate to satisfy the 14th amendment due process protections against pre-judgment seizures mandated in Sniadach v. Family Financial Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and its progeny.[8] On appeal, the Third Circuit examined the nature and extent of the deprivation suffered by the defendant as to whose property the notice of lis pendens was filed, weighed the interests of the parties, and found that the New Jersey lis pendens procedures comport with "fundamental fairness" and provide "an acceptable accommodation of the competing interests of the parties." 670 F.2d at 1328.
With the New Jersey lis pendens statute thus restored to constitutional health, the distinction recently made by this court between the substantive and notice aspects of lis pendens is unnecessary. United S. & L. Ass'n v. Scruggs, 181 N.J. Super. 52 (Ch.Div. 1981).[9] Similarly, the procedure suggested in dictum in *320 the same opinion, to obviate due process concerns when filing a notice of lis pendens to effect an attachment of real property, has been rendered superfluous,[10] absent an extant holding on the subject or the mandate of the Supreme Court by a Rule of Procedure.
The Federal Constitution, however, and the Federal Courts' interpretation thereof, establish only minimum constitutional safeguards. Thus a state court may require greater protection under its own constitution than would be mandated by the U.S. Constitution, So. Burlington Cty. N.A.A.C.P. v. Tp. of Mt. Laurel, 67 N.J. 151, 174-175 (1975), and it may apply a more restrictive interpretation to the due process clause of the Federal Constitution than would be applied by the Federal Courts. State v. Norflett, 67 N.J. 268, 286 (1975). This court, however, will not by dictum attempt to set such standards, when there is neither a need to resolve the issue here, nor, without a Federal determination of unconstitutionality, to establish validating procedures. Any further consideration of the validity of the lis pendens statute, therefore, and any promulgation of procedures designed to cure its possible constitutional defects, are better left to the Civil Practice Committee or the New Jersey Supreme Court.
In summary, then, the notice of lis pendens filed by the Bariles on May 25, 1979 was constitutionally sound; was sufficient under the terms of N.J.S.A. 2A:15-6; and was not rendered *321 ineffective by the Bariles' later abandonment of their claim for specific performance.

II
Since the filing of the notice of lis pendens preceded the recording of B.J.I. Corp.'s mortgage, the Bariles' judgment could now be declared superior to the mortgage were it not that their contract with American Dream/Larry W. Corp. contained a general subordination clause. This provision expressly subordinated the buyer's rights under the agreement "to any mortgage now on the premises or hereafter to be placed on the premises." Such subordination agreements are frequently used where an owner/lessor or seller/mortgagee agrees to subordinate a fee simple interest or purchase money mortgage to the lien of a construction loan, so that the lessee or purchaser may obtain financing to develop the property. 29 New Jersey Practice (Cunningham and Tischler, Law of Mortgages), § 28 at 87 (1975). Such agreements are also used, although less often, to subordinate a purchaser's rights in real property to a construction mortgage placed on the property by a seller-developer.
The subordination clause in the Bariles' contract was a blanket provision, which failed to specify the term, the maximum principal amount or the maximum interest rate of the contemplated mortgage. More importantly, however, it failed to limit the use of the proceeds of any present or future liens on the property. Although there is no substantial body of case law in New Jersey dealing with the validity or permissible scope of blanket subordination provisions, other jurisdictions, most notably California, have applied a general standard of fairness and reasonableness to such broad provisions and in certain cases have held them ineffective. Handy v. Gordon, 65 Cal.2d 578, 55 Cal. Rptr. 769, 422 P.2d 329 (Sup.Ct. 1967). See, also, 29 New Jersey Practice at 90, 536.
The difficulty presented by a general subordination provision of this sort is that nothing in the language of the provision itself *322 requires the borrower to apply the proceeds of the loan to the improvement of the property being purchased by the subordinating party. The authoritative New Jersey case dealing with the validity and scope of subordination agreements is Cambridge Acceptance Corp. v. Hockstein, 102 N.J. Super. 435, 438 (App.Div. 1968), which sets forth a general rule:
... [A]bsent an express stipulation between the subordinator and the construction lender conditioning the scope of the subordination, diversion of the construction money by the borrower from its contemplated use will not dislodge the advanced lienor from his bargained-for priority "in the absence of collusion with the mortgagor in diverting the money from its purpose." [Casner, ed., 4 American Law of Property, § 16.106D, at 218; (1952); additional citations omitted; emphasis supplied].
As an exception to this general rule, however, Cambridge Acceptance Corp. goes on to state:
Where, however, the construction mortgagee expressly agrees with the subordinator to see to it that the proceeds of his loan will be applied to construction of the improvement, he will be held to his agreement and will lose his priority as to any advance not going into the construction. Albert & Kernahan v. Franklin Arms, 104 N.J. Eq. 446 (E. & A. 1929). [102 N.J. Super. at 439; additional citations omitted; emphasis supplied].
No evidence has been presented to indicate that the mortgage Larry W. Corp. executed in favor of B.J.I. Corp., to which the Bariles' interest in the property was subordinated, was intended for construction purposes. Indeed, the mortgage was not placed on the property until seven months after American Dream had attempted to repudiate its contract with the Bariles. Nor has evidence been presented as to how the loan proceeds were actually applied. Assuming for the moment that B.J.I. Corp. was in fact a construction lender, thereby bringing the matter more squarely within the scope of Cambridge Acceptance Corp., it is the general rule of this latter case that would apply here, and not the exception. Neither of the two events that would take the subordination clause at issue here out of the general rule stated in Cambridge Acceptance Corp., i.e. an "express stipulation" between B.J.I. Corp. and the Bariles specifying the application of the loan proceeds, or collusion between Larry W. Corp. and B.J.I. Corp. for the purpose of diverting the *323 mortgage monies from their contemplated use, has ever been alleged. Thus B.J.I. Corp. would not forfeit the position of priority granted by the subordination clause, even if Larry W. Corp. failed to apply the proceeds to improve the property that secured the loan.
Cambridge Acceptance Corp., however, dealt with a commercial transaction. The subordinating party was a lessor, and the terms of the lease required the lessee to construct a motel on the property. As noted in the case, the subordination was agreed upon in order to facilitate the lessee's obtaining monies from a "construction lender," and it was "bargained for" and executed as a separate document. See, also, the trial court's opinion in the case, entitled Cambridge Acceptance Corp. v. American Nat'l Motor Inns, Inc., 96 N.J. Super. 183 (Ch.Div. 1967). In contrast, the Bariles here were involved in a consumer-type transaction. They contracted with a developer for the purchase of a lot and for the construction of their home. The subordination was a self-executing, blanket provision embodied in a 21-clause contract. Nowhere is there any indication that the clause was separately considered, let alone specifically bargained for.
This court will carefully scrutinize the equities of such a transaction and will apply the judicial standards of fairness and reasonableness followed in other jurisdictions, enhanced by our principles of equity, to give relief against obvious injustice if the facts so warrant. Where there is no express agreement as to the use of the loan monies in the subordination clause itself, in the contract as a whole, or in a separate stipulation, such a clause may be found ineffective to elevate the lender, whose advances were not used to benefit the property of the subordinator, to a position of priority, unless the clause was bargained for and its consequences fully understood by the subordinating *324 party. This court may upset such a general subordination clause in a consumer-type contract.[11]
If such a general subordination clause is not shown to have been bargained for and understood, the clause will be presumed to be "specific," i.e., to require implicitly that the loan proceeds be allocated to direct or indirect improvements upon the particular property burdened by the mortgage.[12] Insofar as it is shown that the mortgage monies have been diverted beyond this presumed scope of their contemplated use, then the subordination clause itself will be limited to the reasonable presumed intent of the parties, and to that extent will not operate to alter the normal priority of interests in the property.[13]

*325 III
Based on all of the foregoing, it is the decision of this court that the notice of lis pendens filed by the Bariles within the context of their action for specific performance of a real estate contract is valid. The priority of the parties' claims, however, will depend on the effect given the subordination clause in the contract. This can only be determined after testimony is taken as to whether the clause was bargained for, and what the parties understood and intended its effect to be. Proof must also be presented as to the actual application of the mortgage monies. Therefore, both parties' motions for summary judgment are denied.
NOTES
[1] Although the mortgage covers three lots, B.J.I. Corp. has elected not to foreclose on the third lot at this time.
[2] Larry W. Corp. and the other named defendants, apart from the Bariles, have not answered plaintiffs' complaint; defaults have been entered against them.
[3] The Court does not consider the applicability of the doctrine of marshaling assets, see Johnson v. Lentini, 66 N.J. Super. 398, 409-10 (Ch.Div. 1961); 53 Am.Jur.2d, Marshaling Assets, § 7 at 13, as neither party has raised this issue.
[4] Recent decisions examining the constitutional implications of this statute, N.J.S.A. 2A:15-6 et seq., are considered later in this opinion.
[5] As registered agent of American Dream and Larry W. Corp., he merely received service of the summons and complaint on June 19, 1979, and passed these documents on to the appropriate people within the two corporations. He claims that he himself was not aware of the contents of these documents, nor of the nature or subject matter of the suit.
[6] Although title to the property in question was in Larry W. Corp., the two entities  American Dream and Larry W. Corp.  were located at the same address and used the same attorney and the same registered agent, and it appeared that Larry W. Gardner was or had been involved in each corporation. It was alleged in the Bariles' complaint that Larry W. Corp. was aware of and acquiesced in American Dream's project to develop and sell the "Ivy Hill" lots. Such allegations were never denied by either defendant, and the default judgment taken against both American Dream and Larry W. Corp. established the interrelationship of these two corporations. This court will, therefore, for the purpose of this discussion, treat American Dream and Larry W. Corp. as a single entity.
[7] To hold to the contrary would be to exalt form over substance. If the Bariles had pursued their acknowledged specific performance claim to a successful conclusion, they then could have used their specific performance judgment as either (a) the basis for a cash settlement with defendants, to obtain the difference between the contract price of the property and its fair market value, or (b) to then resell the property to a third party. The question of priority, therefore, would never have been raised. Their short-cut approach of obtaining a dollar judgment was dictated by time and financial constraints. The Bariles should not be penalized for lacking the financial resources to carry the expense of their new home while prosecuting a lengthy specific performance action.

This court recognizes the apparent anomaly in according a money judgment a priority position vis-a-vis a mortgage. Under the particular facts of this case, however, it would simply be inequitable to subordinate the Bariles' claim to that of Larry W. Corp./American Dream.
[8] Sniadach, supra; Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Mitchell v. W.T. Grant, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); and No. Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).
[9] An analysis of the language of N.J.S.A. 2A:15-6, and of the construction of this language provided in General Electric Credit Corp. v. Winnebago of N.J., 149 N.J. Super. 81, 85-86 (App.Div. 1977) led this court to conclude in Scruggs that the filing of a notice of lis pendens may assume one of two separate and distinct aspects. In its substantive aspect, the notice of lis pendens in effect establishes a restriction or creates a lien on the defendant's property. This use of the statutory procedure amounts to an attachment of or a pre-judgment execution on defendant's realty, and as such was held constitutionally invalid. In its notice aspect, however, the filing merely provides constructive notice to the world that a pre-existing lien is being foreclosed. Since no new restriction is imposed thereby on defendant's property, this use of the lis pendens procedure does not give rise to due process concerns.
[10] The procedure outlined in Scruggs is analogous to that required to obtain a writ of attachment under R. 4:60-5(a). Under such procedure the plaintiff would be required to make a minimal showing that the claim warrants the degree of deprivation of defendant's property rights that occurs when notice of lis pendens is filed. 181 N.J. Super. at 60. Although this court still would urge such a procedure, as noted infra, such change in procedure will not be mandated at this time.
[11] New Jersey statutes and case law support such differential treatment of commercial and consumer transactions. To list but a few examples of statutory protection of consumers, or of parties with unequal bargaining power, see N.J.S.A. 52:17B-5.6 et seq. (establishes the Office of Consumer Protection); N.J.S.A. 52:17B-119 (declares the public policy to protect consumers); N.J.S.A. 56:8-1 et seq., the Consumer Fraud Act (to prevent deception in connection with sale and advertisement of merchandise and real estate); N.J.S.A. 17:3B-1 et seq., the Consumer Credit Protection Act; N.J.S.A. 17:16C-1 et seq., the Retail Installment Sales Act; N.J.S.A. 2A:18-61.1 et seq., the Tenants' Rights Act. For cases providing particular protection to consumers, see McDonald v. Mianecki, 79 N.J. 275 (1979) (implied warranty of habitability of builder-developer to new home purchaser); Marini v. Ireland, 56 N.J. 130 (1970) (implied warranty of habitability as to leased dwelling); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960) (products liability), and Unico v. Owen, 50 N.J. 101 (1967) (negotiable instruments).
[12] Direct improvements would, of course, include construction of a dwelling house on the subordinator's property. Indirect improvements include such off-site construction as roads, curbs and gutters, sewers, etc., which nonetheless enhance the subordinator's property. If the mortgage covers more than one parcel of property, the proceeds must be fairly allocated to cover improvement costs and to provide appropriate benefits to each parcel.
[13] Once the subordination is deemed to be specific and the loan proceeds are therefore required to be applied for the benefit of the mortgaged property, the purchaser may acquire the protection not only of the civil law, as discussed above, but of the criminal law as well. N.J.S.A. 2C:20-9 imposes criminal sanctions:

... [a] person who purposely obtains or retains property upon agreement or subject to a known legal obligation to make specific payment or other disposition, whether from such property or its proceeds ... is guilty of theft if he deals with the property obtained as his own and fails to make the required payment or disposition.
In addition, N.J.S.A. 2A:29A-1 et seq. provides that monies deposited or advanced toward the purchase of property and the construction of a dwelling thereon are trust funds, which must be used to carry out the provisions of the purchaser's contract. Any other use of such monies constitutes an unlawful diversion of funds, and violators shall be fined or imprisoned as disorderly persons.
N.J.S.A. 2A:29A-1 et seq. does not apply in the case at bar, of course, since American Dream returned the Bariles' deposit. Nonetheless, the principle underlying this statute, and N.J.S.A. 2C:20-9 as well, is pertinent here: a purchaser of real property who contracts for the construction of a home thereon is entitled to the assurance that any financial commitment he makes to the developer for the purpose of such construction will be reflected accordingly in improvements to the property itself.