649 A.2d 1293

JOHNSON–SHEA ASSOCIATES, A NEW JERSEY PARTNERSHIP, PLAINTIFF–RESPONDENT, v. UNION VALLEY CORPORATION, UNION VALLEY PROPERTIES, INC. FIRST FIDELITY BANK, NATIONAL ASSOCIATION, NEW JERSEY, THE FIRST NATIONAL BANK OF TOMS RIVER, NJ, DEFENDANTS, AND FIRST FIDELITY BANK, N.A., NEW JERSEY, DEFENDANT–APPELLANT, AND FIRST FIDELITY BANK, N.A., NEW JERSEY, THIRD–PARTY PLAINTIFF, v. WINDING WAYS HOMEOWNERS ASSOCIATION, THIRD–PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued October 31, 1994—Decided November 17, 1994.

Before Judges DREIER, VILLANUEVA and BILDER.

*Stuart J. Glick* argued the cause for appellant (*Hannoch Weisman,* attorneys; *Sheldon M. Finkelstein,* of counsel; *Mr. Glick* and *Brian W. Hofmeister,* on the brief).

*Reuel E. Topas* argued the cause for respondent (*Levin, Shea, Pfeffer, McMahon & Russell,* attorneys; *Mr. Topas,* on the brief).

The opinion of the court was delivered by

BILDER, J.A.D. (retired and temporarily assigned on recall).

This is a mortgage foreclosure action. A junior lienholder, defendant First Fidelity Bank, appeals from an order of the Chancery Division, entered as the result of cross-motions for summary judgment, denying its claim to a priority based upon a subordination clause in plaintiff Johnson–Shea Associates' primary mortgage.[1]

I.

The mortgage being foreclosed was given on January 19, 1988 in connection with the sale of a 131 acre tract of vacant land in Jackson Township by plaintiff Johnson–Shea Associates to a developer, Union Valley Corporation, for the development of a planned

[1] At oral argument we were advised that the foreclosure sale has taken place and the funds are in court pending disposition of this appeal.

retirement community. Part of the purchase price was represented by a note secured by the mortgage being foreclosed. Although entitled a "Wraparound Mortgage" because it also secured the unpaid balance due on a pre-existing First Mortgage,[2] the mortgage in controversy acknowledges itself to be a purchase money mortgage.[3] As normally occurs in such transactions, the mortgage contained a clause which permitted the developer to use the property as collateral to obtain funds for its development by subordinating the purchase money mortgage to a subsequent mortgage given to an institutional lender for that purpose.[4] *See B.J.I. Corp. v. Larry W. Corp.*, 183 *N.J.Super.* 310, 321, 443 *A.*2d 1096 (Ch.Div.1982). The clause read as follows:

The Wraparound Mortgage shall be made subordinate to the lien and provisions of a mortgage (the "Development Mortgage") to be executed and delivered by Mortgagor to an institutional lender as security for the payment of a promissory note (the "Development Note") to be executed by Mortgagor on the following terms and conditions:

1. Mortgagee shall not be obligated to pay any such loan or any part thereof;
2. Mortgagor shall be obligated for the payment of the Development Note;
3. Mortgagor shall have paid to Mortgagee on or before May 24, 1988 the installment of principal necessary to satisfy and pay in full the First Mortgage;

[2] The First Mortgage was from a predecessor in interest of plaintiff, James R. Johnson and James R. Johnson, Jr. to Leisure + Technology, Inc. A purchase money mortgage that incorporates an existing mortgage which the purchaser covenants to satisfy is commonly referred to as a wraparound mortgage. *See Stuchin v. Kasirer*, 237 *N.J.Super.* 604, 607, 568 *A.*2d 907 (App.Div.1990), certif. den., 121 *N.J.* 660, 583 *A.*2d 346 (1990).

[3] "The Wraparound Mortgage constitutes a purchase-money mortgage given to secure a portion of the purchase price paid by the Mortgagor in acquiring fee title to the Mortgaged Premises."

[4] The mortgage related the intention of the purchaser to develop and sell residential condominium units and similarly contained provisions for the release of units from the lien of the mortgage as the units were sold. A release price of $12,500 was set for each unit. Similar release arrangements were provided in the event the purchaser elected to develop the property as units on fee simple lots. Provision was also made for subordinations to the rights of the holder of the Development Note with respect to streets, roads, easements, or dedications required by appropriate agencies in order to obtain a planned community permit and releases from the lien of the mortgage if required by such agencies.

4. The Development Note shall carry the following term or terms having substantially the same effect:

A. Principal shall not exceed $20,000,000.00;

B. Interest shall not exceed the prime rate from time to time in effect at the lender plus 3% per annum;

C. Principal and interest shall be payable no later than on or before January 19, 1993.

Neither the term "Development Note" nor the term "Development Mortgage" is specifically defined in the mortgage, although the term "Development Note" had been defined in the contract for sale.

"Development Note" means the Purchaser's promissory note to a conventional lending institution for land acquisition, development and building costs and carrying costs in an amount not to exceed $20,000,000.00.

Of course, there being no evidence First Fidelity had knowledge of the contract, as an unrecorded document it cannot affect its rights.

II.

Defendant First Fidelity is a creditor of Union Valley and the holder of subsequent mortgages given by Union Valley after the Wraparound Mortgage.

Starting in about March 1987 First Fidelity advanced funds to Union Valley under a Revolving Credit agreement, initially for $80,000,000, and later, by a May 1988 increase, for $100,000,000.

The first of First Fidelity's subsequent mortgages was given on March 12, 1990 and by its terms is recited to have been given to induce forbearance with respect to defaults in the Revolving Credit Agreements. A second subsequent mortgage was given on April 19, 1990, denominated "Mortgage Modification Agreement # 1" and specified to correct inadvertent errors contained in the March 12, 1990 mortgage. And a third and final subsequent mortgage was given on September 7, 1990, which again by its express terms recited it to have been given to induce forbearance as well as aiding in a debt restructuring. From a reading of the mortgages it is clear that, apart from additional advances of up to $5,000,000 to complete various construction related jobs with

respect to all of Union Valley's many properties [5] and to meet its overhead expenses, the mortgages were given as further collateral security for an indebtedness in the aggregate principal amount of up to $100,000,000 arising from the Revolving Credit loans.[6]

## III.

The issue in this dispute is whether the mortgages held by First Fidelity essentially as collateral for past indebtedness can be found to be a "Development Mortgage" within the meaning of the Wraparound Mortgage and whether the obligations being secured, i.e. all of Union Valley's obligations to First Fidelity arising under the Revolving Credit Agreement of March 25, 1987, as modified by the amended Revolving Credit Agreement of May 20, 1988, as well as (in the last two mortgages) any additional advances under the so-called Interim Facility, which *inter alia*, provided for up to $5,000,000 to complete various construction related jobs with respect to all of Union Valley's properties and to meet its overhead expenses, can be found to be "Development Notes" within the meaning of the Wraparound Mortgage.

Sometimes it is hard to define what a term means but less difficult to recognize what it is not. This is one of those cases. We are thoroughly satisfied none of the mortgages obtained by First Fidelity in 1990 as additional security for the outstanding obligations due to it from its prior dealings with Union Valley

---

5 The Construction Loan Agreement refers to nine "construction properties" of which the premises in question, a project denominated "Winding Ways", is one. Also included in the "List of Construction Properties" are: Whittingham, Monroe Township, Middlesex County; Sixty Acre Reserve, Jackson Township, Ocean County; Concordia, Monroe Township, Middlesex County; Milwin Farms, Ocean Township, Monmouth County; The Manor at Wayside, Ocean Township, Monmouth County; Crestwood South (also known as Whiting Station), Manchester Township, Ocean County; Francis Mills I and II, Jackson Township, Ocean County; and Brewers Mills, Jackson Township, Ocean County.

6 An April 19, 1990 Construction Loan Agreement recited an aggregate principal balance indebtedness of $92,901,848.49 on that date.

(almost $93,000,000 at the time of the March 1990 mortgage) could be found to be a "Development Mortgage" within the meaning of the Wraparound Mortgage. Moreover, the comprehensive obligations secured by the First Fidelity mortgages could not be found to be "Development Notes."

Read as a whole, without reference to the contract for sale, the subordination clause cannot be understood to refer to security for past obligations not limited to the Wraparound Mortgage premises but relating broadly to the mortgagor's many properties and projects. We are satisfied the references to "Development Mortgage" and "Development Note" contained in the subordination clause must relate to the development of the mortgaged property and solely to that. A requirement that the loan proceeds be allocated to direct or indirect improvements upon the particular property burdened by the mortgage is implicit in the use of the descriptive term "Development Mortgage." The use of this term is no different than the term "Construction Mortgage" often employed in subordination clauses to permit the purchaser of undeveloped property to obtain construction funds its development, *see* 29 *New Jersey Practice (Cunningham and Tischler, Law of Mortgages)*, § 28 at 87 (1975), and commonly understood to be specific. *See B.J.I. Corp. v. Larry W. Corp., supra* at 324, 443 *A.*2d 1096.[7] The Wraparound Mortgage only provided subordination to a conventional construction loan relating to the mortgaged premises and conditioned on the security of the land being developed.

These mortgages whose self proclaimed primary purpose is to secure a previously unsecured loan transaction gone sour cannot be found to be "Development Mortgages" within the meaning of the Wraparound Mortgage. Nor can the continued advances under the credit line be converted into "Development Loans"

---

[7] In *B.J.I. Corp.* Judge Dreier aptly categorized a clause which requires that the loan proceeds be allocated to direct or indirect improvements upon the particular property burdened by the mortgage as "specific." *Id.* at 324, 443 *A.*2d 1096.

within the meaning of that mortgage by tracing some of the funds into the development of the mortgaged premises. A sophisticated banking institution will not be heard to argue to the contrary. We agree with the conclusions of the trial judge in his oral opinion of December 9, 1993 that First Fidelity's mortgages and advances "cannot be considered to be a development mortgage and note" and "the fact that some of the [advances] went into [the Wayside] development would not change it." As he noted, this was simply not the conventional form of construction loan which the Wraparound Mortgage's subordination clause required but a general business loan. We agree with this also. This was a large revolving credit intended to finance a borrower engaged in a large number of projects.

## IV.

■ Defendant's contention that there were disputed issues such as bar summary judgment is without merit. Disputes as to irrelevant facts do not make an issue such as will bar a summary judgment. *See Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 73–75, 110 *A.*2d 24 (1954). Since there are no genuine disputes as to any material fact, the entry of summary judgment was appropriate. *Ibid.* The fact that the trial judge initially believed a plenary hearing was required did not prevent him from adjudicating the matter without further plenary hearing when he correctly concluded that no such hearing was needed.

Affirmed.