291 N.J. Super. 194 (1996)
677 A.2d 224
JOSEPH MANZO, PLAINTIFF-RESPONDENT,
v.
SHAWMUT BANK, N.A., AS SUCCESSOR TO BERKELEY FEDERAL SAVINGS AND LOAN ASSOCIATION, DEFENDANT-APPELLANT, AND ALLEN D. MARCUS AND ARLENE MARCUS, H/W, FIRST FIDELITY BANK, N.A., LASSER, HOCHMAN, MARCUS, GURYAN & KUSKIN, ESQS., AND STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1995.
Decided June 10, 1996.
*197 Before Judges DREIER, KESTIN and CUFF.
Robert J. Rohrberger argued the cause for appellant (Fox and Fox, attorneys; Mr. Rohrberger on the brief).
Donald W. Stieh argued the cause for respondent (Stanton & Stieh, attorneys; Mark L. Stanton on the brief).
The opinion of the court was delivered by CUFF, J.A.D.
In this action to foreclose a second mortgage, the central issue is whether a mortgage recorded after the filing of a notice of lis pendens and during its effective term is entitled to priority over a mortgage granted in settlement of the underlying litigation. Judge Norris Harding held that the later mortgage granted in settlement of the litigation was entitled to priority. We affirm.
The matter was tried on the following stipulated facts:
Affiliated Building Corporation sold to Allen Marcus and Arlene Marcus a parcel of real estate containing a home designated as Lot 49, Block 738.14 on a map entitled "Map/Chateau Royale, Section Two". Closing of title and delivery of the deed took place on January 6, 1988, which deed was recorded January 14, 1988....
A first purchase money mortgage was made by Allen D. Marcus and Arlene Marcus to First Fidelity Bank in the amount of $200,000 dated January 6, 1988 and recorded January 14, 1988 in mortgage book 3586 page 502....
Litigation was commenced on behalf of Affiliated Building vs. Allen Marcus and Arlene Marcus ... on April 20, 1988 seeking rescission of the transfer of the deed which defendants answered on or about May 4, 1988. A Notice of Lis Pendens was filed on behalf of the Plaintiff, Affiliated Building Corp. on April 22, 1988 in recording book 22 page 605 in the Office of the Middlesex County Clerk....
A Mortgage was made by Allen D. Marcus and Arlene Marcus to Berkeley Federal Savings and Loan Association in the amount of $75,000 dated August 17, 1988 and recorded on September 2, 1988 in mortgage book 3706 page 334....

*198 A mortgage was made by Allen D. Marcus and Arlene Marcus to First Fidelity Bank, N.A., New Jersey dated September 12, 1988 and recorded on September 27, 1988 in mortgage book 3717 page 919, securing an unspecified amount....
A Mortgage in the sum of $111,000 was made by Allen D. Marcus and Arlene Marcus to Affiliated Building Corp. dated January 15, 1992 and recorded January 27, 1993 in mortgage book 4381 page 168 in the offices of the Middlesex County Clerk in settlement of the litigation Affiliated Building Corp. v. Allen Marcus and Arlene Marcus....
The mortgage of Affiliated Building Corporation was assigned to Joseph Manzo, simultaneously recorded in book 558 page 731 in the office of the Middlesex County Clerk [on January 27, 1993]....
On June 14, 1993, plaintiff, Joseph Manzo, filed a complaint against the Marcuses, Berkeley (defendant Shawmut's predecessor)[1], First Fidelity, Lasser, Hochman, Marcus, Guryan & Kuskin, Esqs., and the State of New Jersey, seeking to foreclose the $111,000 mortgage assigned from Affiliated to plaintiff. At the March 17, 1994 trial, Judge Harding framed the issue as whether the mortgage given by the Marcuses to Affiliated, which Affiliated contended should have been delivered at the January 1988 closing, related back to the time of the filing of the notice of lis pendens to establish plaintiff's priority over the August 1988 Berkeley and September 1988 First Fidelity mortgages. Judge Harding decided that the Affiliated mortgage was entitled to second position, behind the First Fidelity purchase money mortgage but before the Berkeley and September 1988 First Fidelity mortgages.
Berkeley asserted that the notice of lis pendens had expired prior to the resolution of the Affiliated-Marcus litigation. Judge Harding concluded that the purpose of the lis pendens statute, N.J.S.A. 2A:15-11,[2] is to give notice to subsequent interest holders that their interests are subject to the outcome of the litigation for which the notice of lis pendens was filed. He reasoned that the intent of the statute could not have been to require the litigation to be resolved within three years. He stated, "[I]f you're originally *199 bound by [the lis pendens] as these defendants are, you're bound by it for however long it takes to wind up the lawsuit, whether it be within three years or longer than that." Otherwise, he reasoned, the effectiveness of the lis pendens would vary according to the vagaries of the calendar in individual vicinages. To this end, it is unnecessary for the party asserting rights under the lis pendens to seek judicial extension of the lis pendens. In any event, Judge Harding noted that an extension is not contemplated by statute.
Judge Harding also held that Affiliated's mortgage related back to the date of the filing of the notice of lis pendens. He stated that the notice chargeable to Berkeley and First Fidelity included notice of the actual basis of Affiliated's claim as well as the relief sought. Affiliated asserted that the Marcuses owed approximately $100,000 for extras installed in the house and had breached their promise to execute a note and mortgage in that amount to it. Thus, Judge Harding reasoned that successive lenders, such as Berkeley and First Fidelity, were on notice that a reasonable resolution of Affiliated's claim might be a money judgment secured by a mortgage or the grant of a mortgage to the builder. Judge Harding noted that Affiliated failed to file this mortgage for almost a year, but concluded that Affiliated's lack of diligence did not affect the priority of its mortgage.
Under the common law doctrine of lis pendens, the filing of a lawsuit served as constructive notice to any subsequent purchaser or lienholder that title to the property was contested. The lis pendens statute, N.J.S.A. 2A:15-6 to 15-17, altered this rule by requiring that a notice of lis pendens be filed and recorded for subsequent interest takers to have constructive notice of the pendency of a lawsuit and to take subordinate to the rights the plaintiff derives in the outcome of the litigation. Trus Joist Corp. v. Treetop Assocs., Inc., 97 N.J. 22, 31, 477 A.2d 817 (1984); B.J.I. Corp. v. Larry W. Corp., 183 N.J. Super. 310, 315, 443 A.2d 1096 (Ch.Div. 1982)(quoting United Sav. & Loan Ass'n v. Scruggs, 181 N.J. Super. 52, 54, 436 A.2d 559 (Ch.Div. 1981)); Schwartz v. Grunwald, *200 174 N.J. Super. 164, 168, 415 A.2d 1203 (Ch.Div. 1980); Wendy's of S. Jersey, Inc. v. Blanchard Management Corp. of New Jersey, 170 N.J. Super. 491, 496, 406 A.2d 1337 (Ch.Div. 1979).
N.J.S.A. 2A:15-11 provides that a notice of lis pendens is not effective after three years from the date of its filing.[3] Berkeley apparently concedes that the notice of lis pendens placed it on notice that Affiliated asserted an interest in the property. It argues, however, that after three years the notice loses its effectiveness, not only for those who obtained an interest in the property more than three years after its filing, but also for those who took an interest during the effective term of the notice. Thus, according to Berkeley's argument, its position as a lienholder who took subject to the notice is enhanced by the mere passage of time. We find no basis in law or policy to adopt this interpretation of the statute.
The primary purpose of the notice of lis pendens is to preserve the property which is the subject matter of the lawsuit from actions of the property owner so that full judicial relief can be granted, if the plaintiff prevails. Trus Joist, supra, 97 N.J. at 31, 477 A.2d 817; Wendy's, supra, 170 N.J. Super. at 496-97, 406 A.2d 1337 (quoting 2 Lawrence, Equity Jurisprudence, § 716 at 800 (1929)). The notice of lis pendens also provides constructive notice to subsequent interest takers in the property that a dispute exists concerning rights to the property. See N.J.S.A. 2A:15-7; B.J.I. Corp., supra, 183 N.J. Super. at 315, 443 A.2d 1096. Thus, the notice binds subsequent interest takers to the outcome of the litigation. N.J.S.A. 2A:15-7; Schwartz, supra, 174 N.J. Super. at 167, 415 A.2d 1203; see also Chrysler Corp. v. Fedders Corp., 670 F.2d 1316, 1319-20 (3d Cir.1982).
*201 Berkeley's position does not promote and actually frustrates these purposes. Berkeley's position would virtually require any litigation to be settled, since a party insisting on a trial and possible appellate remedies would do so at the risk of losing any effective remedy. While settlements are encouraged, see Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990), the ultimate goal is a just result. We fail to perceive how the position advanced by Berkeley would do justice to a deserving plaintiff.
Furthermore, Berkeley's argument obtains for it a better position than its own business practices or decision making obtained. Berkeley lent money to the property owner and took a subordinate position on constructive notice that another person sought rescission of the transaction by which the property owner obtained title. Thus, at the time Berkeley obtained its subordinate interest in the property, it did so on notice that its interest might be rendered a nullity.
Berkeley argues that its subsequently-obtained interest should not remain in some suspended state of validity or subordination forever. Yet, remedies are available to challenge the filing or continuation of the notice, N.J.S.A. 2A:15-7b, and to remove the lis pendens, if the plaintiff fails to prosecute the action diligently. N.J.S.A. 2A:15-10; see also O'Boyle v. Fairway Prods., Inc., 169 N.J. Super. 165, 167, 404 A.2d 365 (App.Div. 1979) (discussing a defendant's available remedies when a lis pendens is filed pursuant to a claim of questionable merit, including among these remedies a motion to dismiss the complaint for failure to state a claim or a motion for summary judgment); Polk v. Schwartz, 166 N.J. Super. 292, 299-300, 399 A.2d 1001 (App.Div. 1979).
Finally, Berkeley argues that Judge Harding's interpretation of the statute would lead to inequitable results. It posits the situation in which the owner of the property sells to a third party. Berkeley suggests that the third-party purchaser would take free of the effect of the notice of lis pendens. However, case law strongly suggests that is not so. See Mihranian v. Padula, 134 N.J. Super. 557, 566, 342 A.2d 523 (App.Div. 1975) (declaring assignee *202 of land purchaser's contract bound by earlier lien pursuant to which lis pendens was filed because "[t]o hold otherwise would permit persons ... dealing in real estate to avoid vendee's liens by simply assigning their rights to others and not taking legal title"), aff'd, 70 N.J. 252, 359 A.2d 473 (1976); Turner v. Houpt, 53 N.J. Eq. 526, 554, 33 A. 28 (Ch. 1895) ("Where a litigation is pending between a plaintiff and a defendant, as to the right to a particular estate, the necessities of mankind require that the decision of the court in the suit shall be binding, not only on the litigant parties, but also on those who derive title under them by alienations made pending the suit, whether such alienees had or had not notice of the pending proceedings"), rev'd on other grounds, 55 N.J. Eq. 593, 39 A. 1114 (E. & A. 1897). Finally, any circuity problems would be resolved by established rules governing this issue. See, e.g., Pulawski Sav. & Loan Ass'n v. Aguiar, 174 N.J. Super. 42, 46-50, 415 A.2d 365 (Ch.Div. 1980).
Having decided that the notice of lis pendens affects any party who obtains an interest in the property during the effective term of the notice and until the final resolution of the litigation, we must next determine whether the mortgage obtained by Affiliated and assigned to Manzo in settlement of the litigation which was subject to the notice of lis pendens relates back to the filing date of the notice. Berkeley argues that the mortgage cannot relate back to the filing date of the notice because the mortgage was not within the scope of the relief sought in the notice of lis pendens or the underlying complaint and the underlying lawsuit never resulted in a judgment.
The New Jersey Supreme Court has set forth the test governing when a new matter may relate back to the filing of a notice of lis pendens, namely, "`[1] Are the parties the same, [2] the property to be affected the same, and [3] the general purpose and subject of the suit the same?'" Trus Joist Corp., supra, 97 N.J. at 33, 477 A.2d 817 (quoting Turner, supra, 53 N.J. Eq. at 557, 33 A. 28). The trial court in the present case determined, and Berkeley concedes, that the parties were the same and the property *203 to be affected was the same. The trial court also concluded that the "general purpose and subject" of the suits were the same. Berkeley argues, however, that the mortgage obtained in the settlement was not within the scope of the relief sought in the underlying lawsuit.
In Trus Joist, the Court addressed the extent of the notice given by a notice of lis pendens. Id. at 26, 30-34, 477 A.2d 817. There, a judgment creditor filed suit and a lis pendens against the transferor of property seeking: (1) a declaration that the transferor's conveyance of the subject property to transferee was fraudulent and therefore void and (2) a declaration that its $16,000 judgment was a lien on the property. Id. at 26-27, 477 A.2d 817. Subsequently, the transferor filed a voluntary bankruptcy petition. Id. at 27, 477 A.2d 817. A trustee was appointed in the bankruptcy proceeding but the trustee did not file a lis pendens asserting an interest in the property conveyed to the transferee. Ibid. The transferee then obtained a mortgage on the subject property. Ibid. Since the mortgagee had notice of the judgment creditor's lis pendens filing, it placed funds in escrow to satisfy the judgment if the judgment creditor's lawsuit was successful. Ibid. Finally, the trustee joined the judgment creditor in filing an amended complaint to set aside the conveyance to the transferee, but these parties did not name the mortgagee as a party in that suit and did not change the notice of lis pendens to reflect the amended complaint. Ibid.
After a separate trial and appeal in which the conveyance was deemed fraudulent, the trustee and the judgment creditor made a motion to set aside the mortgagee's interest because this interest could hinder payment to the bankrupt transferor's creditors. Id. at 27-28, 477 A.2d 817. The Court first noted that a notice of lis pendens was a form of taking and so courts "should be reluctant to allow the notice to have an effect greater than what the parties claim in the litigation." Id. at 32, 477 A.2d 817. The Court then stated that the notice of lis pendens does not give subsequent purchasers or mortgagees any notice of the facts, but only notice *204 "`that a suit is pending against a certain party, affecting certain lands in a certain way.'" Ibid. (quoting Turner, supra, 53 N.J. Eq. at 556, 33 A. 28). Determining that the trustee sought to represent creditors and claims other than those mentioned in the lis pendens, the Court decided that these claims did not relate back to the judgment creditor's earlier lis pendens filing. Id. at 33, 477 A.2d 817.
In reaching its conclusion, the Court reasoned that the lis pendens did not give the mortgagee notice of the claims of any creditors other than the judgment creditor who filed the lis pendens. Ibid. Before the mortgage closing, neither the judgment creditor's complaint nor the notice of lis pendens was amended to refer to the transferor's voluntary petition in bankruptcy. Ibid. The Court concluded, "It is impractical to hold that the allegation of fraud placed a burden on [the mortgagee] to continue to search against [the transferor] to find out if bankruptcy proceedings had been instituted after the ... conveyance, and even after the notice of lis pendens had been filed." Id. at 33-34, 477 A.2d 817. The Court then discussed the benefits gained from the mortgage in Trus Joist and also the fact that the transferor's creditors would not be the true beneficiaries of any invalidation of the mortgage in issue. Id. at 35, 477 A.2d 817. Finally, the Court held that the mortgage was valid as against the trustee's claims because those claims could not relate back to the judgment creditor's lis pendens filing. Id. at 35-36, 477 A.2d 817.
The factual situation in Trus Joist varies greatly from that of the present case; nevertheless, it directs the result in this case. It must be noted that in Trus Joist, the Court stated unequivocally that in a priority contest between the judgment creditor and the mortgagee, the judgment creditor would prevail since the mortgagee took its interest on notice of the judgment creditor's claim. Id. at 33, 477 A.2d 817.
In the present case the issue is whether the outcome of the very lawsuit for which a lis pendens was filed can relate back to the filing of the lis pendens. A title search would have revealed the *205 notice which referred to the Affiliated complaint. That complaint sought rescission of the deed transfer because the Marcuses failed to deliver a $100,000 note and mortgage to Affiliated in exchange for Affiliated's providing approximately $100,000 worth of extras for the Marcuses' house.[4] Applying the reasoning of the Trus Joist Court to the facts of the present case, one must ask if Berkeley would have issued the Marcuses a mortgage in the face of Affiliated's claim for rescission of the deed conveyance, but would not have issued a mortgage if Affiliated had also made a claim for execution and delivery of the $100,000 note and mortgage mentioned in the complaint. As the trial judge accurately observed, if Affiliated obtained the relief sought in the lis pendens and complaint, namely, rescission of the deed transfer, Berkeley would be in a worse position than if the court deemed Affiliated's mortgage superior to that of defendant. Rescission would have provided defendant with no interest in the property; the mortgage theoretically does not terminate defendant's interest. Moreover, unlike the mortgagee in Trus Joist who placed funds in escrow to protect itself from the possible $16,000 lien, the defendant in the present case took no such steps. Thus, it is difficult to believe, on the basis of Trus Joist, that the need for certainty in land transactions would be undermined by relating back to a lis pendens a form of relief that would grant defendant greater, not lesser, rights in the property than the specific relief actually sought.
Berkeley next contends that the mortgage cannot relate back to the lis pendens filing because the underlying lawsuit never resulted in a judgment. According to N.J.S.A. 2A:15-7:
[A]ny person claiming title to, interest in or lien upon the real estate described in the notice [of lis pendens] through any defendant in the action as to which the *206 notice is filed shall be deemed to have acquired the same with knowledge of the pendency of the action, and shall be bound by any judgment entered therein....
[N.J.S.A. 2A:15-7a (emphasis added).]
Berkeley maintains that this language means that defendant can be bound by only judgments, not settlements, ultimately obtained in the underlying lawsuit. It contrasts this provision with N.J.S.A. 2A:15-17, which reads:
If the judgment has been paid ... or the action has been settled ... but the party who filed the notice of lis pendens fails to file the warrant stated, the court having jurisdiction of the action may, upon being satisfied of the fact of such payment [or] . .. settlement ... and upon such notice as it may by its order direct, order the real estate affected and described in the notice of lis pendens to be discharged of all claims or equities set up in the complaint in the action.
[N.J.S.A. 2A:15-17.]
Thus, Berkeley claims a settlement discharges the lis pendens and extinguishes the basis by which the mortgage granted by the settlement may relate back to the lis pendens.
As a general rule of statutory construction, "`the meaning of a statute must ... be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms.'" Sheeran v. Nationwide Mut. Ins. Co., Inc., 80 N.J. 548, 556, 404 A.2d 625 (1979) (citations omitted). A court should not ignore, however, the intent of a statute evidenced by the statute as a whole. See, e.g., ibid. (interpreting the New Jersey Automobile Reparation Reform Act (No-Fault Act), N.J.S.A. 39:6A-3). Moreover, when a literal reading of the statute does not lead to a sensible result, a court should reject the literal reading. Schierstead v. Brigantine, 29 N.J. 220, 231, 148 A.2d 591 (1959).
N.J.S.A. 2A:15-7 clearly provides that a subsequent purchaser is bound by a "judgment" entered in a lawsuit pursuant to which a notice of lis pendens was filed. However, when the lis pendens statute is read as a whole, it is apparent that the Legislature contemplated that disputes covered by a notice might be resolved by a settlement. See N.J.S.A. 2A:15-17. Section 17 of the statute recognizes that a party such as defendant can reasonably anticipate one of three resolutions of the underlying dispute: dismissal, *207 judgment in favor of plaintiff or a settlement. It would be an anomalous result if the parties to a dispute for which a notice was filed lost the protection of that notice by resorting to a settlement to resolve their dispute rather than a trial or a consent judgment. The latter course is particularly unnecessary when the product of the settlement is a recordable instrument.
Thus, we conclude that an entity which takes an interest in real property after the filing of a notice of lis pendens is bound by the resolution of the underlying litigation, even if the litigation is concluded after the effective term of the notice of lis pendens. Furthermore, the mortgage granted in settlement of the litigation relates back to the notice of lis pendens and takes priority over mortgages granted after the filing of the notice of lis pendens.
Affirmed.
NOTES
[1] We shall refer to Shawmut as Berkeley.
[2] When the notice was filed, the statute read: "No notice of lis pendens shall be effective after 3 years from the date of its filing."
[3] N.J.S.A. 2A:15-11 was amended September 5, 1995, L. 1995, c. 244, § 16, and became effective December 4, 1995. As amended, a notice of lis pendens is effective for five years from the date of filing.
[4] There is no question that Affiliated's complaint did not indicate that Affiliated was specifically seeking the imposition of a mortgage upon the Marcuses' property. On the other hand, the basis asserted by Affiliated to rescind the transfer was the purchasers' failure to deliver a $100,000 note and mortgage for the extras.