711 A.2d 940 (1998)
312 N.J. Super. 312
TOWNSHIP COMMITTEE OF THE TOWNSHIP OF NEPTUNE and Patricia A. Monroe, Mayor of Township of Neptune, Plaintiffs-Appellants,
v.
Peter STAGG, Defendant-Respondent.
TOWNSHIP OF NEPTUNE SEWERAGE AUTHORITY, Plaintiff-Respondent,
v.
TOWNSHIP COMMITTEE OF THE TOWNSHIP OF NEPTUNE and Patricia A. Monroe, Mayor of the Township of Neptune, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1998.
Decided June 4, 1998.
Daniel P. Jacobson, Neptune, for plaintiffs-appellants, Township Committee of the Township of Neptune and Patricia A. Monroe, Mayor of the Township of Neptune.
William J. O'Hagan, Jr., Neptune, for plaintiff-respondent, Township of Neptune Sewerage Authority (Stout & O'Hagan, attorneys; Mr. O'Hagan, of counsel; Laurence I. Rothstein, on the brief).
James J. McGann, Ocean Grove, for defendant-respondent, Peter Stagg.
*941 Before Judges SHEBELL, D'ANNUNZIO and COBURN.
The opinion of the court was delivered by
SHEBELL, P.J.A.D.
On May 15, 1997, the Township Committee of the Township of Neptune and Patricia A. Monroe, Mayor of the Township of Neptune (Neptune), filed a verified complaint in lieu of prerogative writ against defendant, Peter Stagg (Stagg), seeking judgment against Stagg declaring his continued membership on the Township of Neptune Sewerage Authority (Authority) to be illegal and ordering him to relinquish his seat. On May 20, 1997, the judge signed an Order to Show Cause as to why the relief sought by plaintiffs should not be granted.
On June 6, 1997, the Authority filed a verified complaint against plaintiffs in the first action demanding judgment declaring that residency is not a prerequisite for Stagg's continued employment. On the same date, the judge signed an Order to Show Cause setting a hearing date as to why the relief sought by the Authority should not be granted. On June 19, 1997, the judge signed an order consolidating the two actions.
On June 23, 1997, Florence R. Peskoe, J.S.C., granted the relief sought by the Authority, and on June 26, 1997, she issued a letter opinion setting forth her reasons. This appeal followed on July 24, 1997. We affirm.
The Authority was created by the Township Committee pursuant to the Sewerage Authorities Law, N.J.S.A. 40:14A-1 to 37. On January 17, 1995, Stagg was appointed to the Authority for a five (5) year term expiring on February 1, 2000. At the time of his appointment, he was a resident of Neptune. However, during the course of his appointment, Stagg relocated to nearby Wall Township.
In a letter dated April 17, 1997, Neptune's Attorney requested confirmation that Stagg had become a resident of Wall Township and inquired if Stagg was resigning his position. The Authority's attorney confirmed that Stagg was no longer a resident of Neptune, but stated that Stagg had no intention of resigning.
The judge, in her letter opinion granting the Authority relief, held that the Legislature chose not to include a residency requirement in N.J.S.A. 40:14A-4(a)-(c) and, therefore, the court had no basis to read one into the statute. The judge concluded that "[s]ince no other statute or ordinance dealing with sewerage authority membership qualifications addresses the residency issue, the court must declare that residency in Neptune is not a prerequisite for Peter Stagg to continue as a member of the Authority."
Neptune argues that the court erred in granting the relief sought by the Authority, because Stagg, as a non-resident, is illegally serving as a member of Neptune's Authority. The Authority argues that while the statute may be silent on the issue of residency, such a requirement must be read into the statute.
The construction of any statute begins with consideration of its plain language. Board of Educ. of Neptune Township v. Neptune Township Educ. Assoc., 144 N.J. 16, 25, 675 A.2d 611 (1996) (citing Merin v. Maglaki, 126 N.J. 430, 434, 599 A.2d 1256 (1992)); State v. Sutton, 132 N.J. 471, 479, 625 A.2d 1132 (1993). A statute should be given its plain meaning if it is "clear and unambiguous on its face and admits of only one interpretation." Board of Educ. of Neptune Township, supra, 144 N.J. at 25, 675 A.2d 611 (quoting State v. Butler, 89 N.J. 220, 226, 445 A.2d 399 (1982)). A statute's meaning should be sought in the language in which it is framed, and if that is plain, the sole function of the courts is to enforce it according to its terms. Manzo v. Shawmut Bank, N.A., 291 N.J.Super. 194, 206, 677 A.2d 224 (App.Div.1996) (quoting Sheeran v. Nationwide Mutual Ins. Co., 80 N.J. 548, 556, 404 A.2d 625 (1979)). However, if a literal reading of the statute does not lead to a sensible result, then such a reading should be rejected. Id. at 206, 677 A.2d 224 (citing Schierstead v. Brigantine, 29 N.J. 220, 231, 148 A.2d 591 (1959)).
N.J.S.A. 40:14A-4(b) provides:
The governing body of any municipality may, by ordinance duly adopted, create public body corporate and politic under the name and style of "the ... sewerage authority," with all or any significant part of *942 the name of such municipality inserted. A sewerage authority created pursuant to this section by a municipality other than a city of the first class shall consist of five members and a sewerage authority created pursuant to this section by a municipality which is a city of the first class shall consist of five or seven members, as determined by the governing body. Members of the sewerage authority shall be appointed by resolution of the governing body as hereinafter in this section provided, and the authority shall constitute the sewerage authority contemplated and provided for in this act and an agency and instrumentality of said municipality. After the taking effect of such ordinance and the filing of a certified copy thereof as in subsection (d) of this section provided, the members of the sewerage authority shall be appointed... In the event of a vacancy in the membership of the sewerage authority occurring during an unexpired term of office, a person shall be appointed as a member of the sewerage authority to serve for such unexpired term....
Since this section does not contain a residency requirement, the Authority argues that the Legislature intended that there should not be one. Additionally, the Sewerage Authority law does not provide a basis to remove a member because of residency. N.J.S.A. 40:14A-5(c) provides:
A member of a sewerage authority may be removed only by the governing body by which he was appointed and only for inefficiency or neglect of duty or misconduct in office and after he shall have been given a copy of the charges against him and, not sooner than ten days thereafter, had opportunity in person or by counsel to be heard thereon by such governing body.
As this provision indicates, an Authority member can be removed only for inefficiency or neglect of duty or misconduct. Lack of residency is not mentioned as a ground for removal.
In contrast to N.J.S.A. 40:14A-4(a)-(c), two other sections of the Sewerage Authority Law contain residency requirements. N.J.S.A. 40:14A-4(l) provides:
(l) Whenever, with the approval of any sewerage authority created by the governing bodies of two or more municipalities, any other municipality not constituting part of the district shall convey to the sewerage authority all or any part of a system of main, lateral or other sewers or other sewerage facilities located within the district and theretofore owned and operated by such other municipality, then, if so provided in the instruments of such conveyance, one additional member of the sewerage authority for such other municipality shall be appointed by resolution of its governing body as in this section provided. The additional member so appointed for such municipality, and his successors, shall be residents of such municipality....

[N.J.S.A. 40:14A-4(l) (emphasis added).]
Similarly, N.J.S.A. 40:14A-4(o) provides that when "any sewerage authority has entered into a contract for the treatment or disposal of sewage originating in the district ... with any contiguous sewerage authority, then, with the approval of the contiguous sewerage authority, the sewerage authority may appoint... two additional members to the contiguous sewerage authority...." The statute requires that the additional members "shall be either residents of the district of the sewerage authority or members of the executive director of the sewerage authority." Ibid.
The Authority argues that the Legislature's inclusion of residency requirements in these two sections and decision not to include a residency requirement in N.J.S.A. 40:14A-4(a)-(c) was deliberate. In contrast, Neptune contends that the trial judge erred in her application of the canon of construction of inclusio unius est exclusio alterius, "the inclusion of one is the exclusion of another." Neptune argues that the inclusion of residency requirements in these other sections does not mean that a residency requirement should not be implied in N.J.S.A. 40:14A-4(a)-(c).
As our Supreme Court noted in Bunk v. Port Authority of New York & New Jersey, 144 N.J. 176, 190, 676 A.2d 118 (1996), this cannon of construction must yield *943 to legislative intent. Interpretation of a statute will not "turn on literalisms, technisms or the so-called rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the common sense of the situation." Id. at 191, 676 A.2d 118 (quoting J.C. Chap. Prop. Owner's v. City Council, 55 N.J. 86, 101, 259 A.2d 698 (1969)). Thus, the cannon of inclusio unius est exclusio alterius should be applied only when the implication is clear and compelling. Wright v. Port Auth., 263 N.J.Super. 6, 20, 621 A.2d 941 (App.Div.) (quoting Gangemi v. Berry, 25 N.J. 1, 11, 134 A.2d 1 (1957)), certif. denied, 133 N.J. 442, 627 A.2d 1147 (1993).
Neptune argues that application of this cannon of construction leads to an irrational result as it makes no sense for the Legislature to provide a residency requirement for Authority members only in these two situations and not require residency of all Authority members. The Legislature's action can, however, be rationally explained. Both, N.J.S.A. 40:14A-4(l) and (o) involve dealings between two municipalities and the appointment of new members to an Authority as a result of such interaction. The residency provisions ensure that both municipalities involved in the transaction will be represented.
In contrast, N.J.S.A. 40:14A-4(a)-(c) involve only one municipality's Authority. Since there is no residency requirement in the statute, each municipality is given the power to decide how best to fill vacant positions. The Legislature, in enacting N.J.S.A. 40A:9-1.3, has delegated the decision on whether to require residency for municipal officers and employees. N.J.S.A. 40A:9-1.3 provides:
Unless otherwise provided by law, the governing body of any local unit may by resolution or ordinance, as appropriate, require, subject to the provisions of this act, all officers and employees employed by the local unit after the effective date of this act to be bona fide residents therein.
Pursuant to this statute, it is a municipality's decision as to whether to require residency as a condition of appointment, unless otherwise provided by law. This statute refutes Neptune's argument that a residency requirement should be presumed unless a statute provides otherwise.
The removal of a municipal or county officer based on such a residency requirement is governed by N.J.S.A. 40A:9-12.1, which provides that an office is deemed vacant "[u]pon the determination of the appointing authority that, in violation of a lawful residency requirement, such officer no longer resides within the corporate limits of the local unit or other designated territorial area." Neptune has not adopted a residency requirement for Authority members. Since such a requirement has not been adopted, Stagg cannot be removed on the basis that he vacated his position by moving his residence.
Neptune contends that refusing to imply a residency requirement goes against common sense as it would be irrational to permit a person residing outside of a municipality to serve on an Authority. For instance, the Legislature could not have intended to give the Township the option of appointing five individuals from California to run the Authority, resulting in a system of patronage where people residing anywhere in the country could receive an appointment and receive health and pension benefits for which the municipality would have to pay. We believe this scenario is unlikely to occur, since a local governing body would be unable to justify such appointments and must in any event account to the electorate.
Neptune also argues that the powers of the Authority should not be delegated to non-residents. While it is a separate and distinct governmental unit, a municipal sewerage authority is the "alter ego" of a municipality and acts as the means for discharging the local governmental responsibility for public health, comfort, convenience and welfare in relation to the disposal of sewage. Camden County v. Pennsauken Sewerage Auth., 15 N.J. 456, 465, 105 A.2d 505 (1954). A municipality delegates significant powers to a sewerage authority. For instance, a sewerage authority may enter into contracts, condemn property, impose service charges on users, and issue bonds. N.J.S.A. 40:14A-7,8. Neptune, therefore, argues that it would be illogical for the Legislature to require *944 elected municipal officials to be residents, pursuant to N.J.S.A. 40A:9-1.12, yet allow them to delegate their responsibilities to non-residents.
There are several reasons why the Legislature would permit non-residents to be appointed and to exercise the Authority's powers. The responsibilities of a sewerage authority extend beyond the boundaries of any one municipality. In passing the Sewerage Authorities Law, the Legislature stated:
It is hereby declared to be in the public interest and to be the policy of the State to foster and promote by all reasonable means the relief of waters in or bordering the State from pollution and thus to reduce and ultimately abate the menace to the public health resulting from such pollution.

[N.J.S.A. 40:14A-2.]
Thus, the Legislature identified the problem of sewerage disposal as state-wide in scope, rather than as merely local. Furthermore, the ordinance creating the Neptune Sewerage Authority also provides that the responsibilities of the Authority extend beyond municipal borders. The ordinance provides that the Authority's purpose shall be "the relief of waters in or bordering the State from pollution arising from causes in and about said Township and the relief of waters in, bordering or entering the Township from pollution or threatened pollution and the consequent improvement of conditions affecting public health." Thus, permitting non-residents, who are also affected by state-wide pollution, to serve on the Authority is consistent with the Legislature's and the ordinance's stated goals.
Further, a municipality may require flexibility in finding qualified individuals to fill the Authority's positions. See e.g., N.J.S.A. 40A:9-1.15 (providing that any municipal ordinance which requires employees of municipal water works to be residents shall include provision which permits municipality to hire non-residents if municipality is unable to hire a qualified resident). The tasks the Authority performs are highly specialized. As a result, a municipality may decide that it is desirable to permit a non-resident who has the requisite knowledge and experience to serve on the Authority and to exercise delegated powers.
The legislative history of N.J.S.A. 40:14A-4(a)-(c) is silent on the issue of whether the Legislature intended a residency requirement to be implied. Nevertheless, the trial judge's interpretation is supported by the plain language of the statute, the Legislature's decision to delegate residency issues to municipalities, the Legislature's goals in passing the Sewerage Authorities Law, the Township's goals in passing the ordinance creating the Authority, and practical considerations such as the need for flexibility in making appointments. Therefore, we find that a residency requirement should not be read into the statute.
Affirmed.