**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0734-18T2

EBURY RE LLC,

    Plaintiff-Appellant,

v.

GLENIS A. DE LA CRUZ,
HECTOR A. DE LA CRUZ
a/k/a HECTOR DE LA CRUZ
VALERIO, and STATE OF NEW
JERSEY,

    Defendants,

and

DEUTSCHE BANK NATIONAL
TRUST COMPANY, AS TRUSTEE
OF THE INDYMAC INDX
MORTGAGE TRUST 2006-AR25,
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-AR25,
UNDER THE POOLING AND SERVICES
AGREEMENT DATED JULY 1, 2006,
improperly pleaded as EASTERN
AMERICAN MORTGAGE CO., a NEW
JERSEY CORPORATION,

    Defendant-Respondent.

_____

Argued December 4, 2019 – Decided December 27, 2019

Before Judges Mayer and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. F-001829-16.

Keith Alan Bonchi argued the cause for appellant (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys; Keith Alan Bonchi, of counsel and on the briefs; Elliott J. Almanza, on the briefs).

Brian J. Slipakoff argued the cause for respondent (Duane Morris, LLP, attorneys; Brett L. Messinger, Brian J. Slipakoff, and Stuart I. Seiden, on the brief).

PER CURIAM

Plaintiff Ebury Re LLC appeals from an April 9, 2018 order vacating a February 23, 2017 final judgment and allowing defendant Deutsche Bank National Trust Company, as trustee of the Indymac Indx Mortgage Trust 2006-AR25, Mortgage Pass-Through Certificates, Series 2006-AR25, under the Pooling and Servicing Agreement dated July 1, 2006 (Deutsche Bank), to file an answer. We affirm.

We provide a detailed recitation of the legal proceedings giving rise to this appeal.

A-0734-18T2

On May 4, 2006, Glenis A. De La Cruz and Hector A. De La Cruz (Borrowers) executed a note for a loan in the amount of $304,000 with Eastern American Mortgage Co. (Eastern American). The Borrowers also executed a mortgage, in the event of a default on the note, granting Eastern American a security interest in a property located in Paterson (Property). Deutsche Bank had an interest in the Property pursuant to an allonge[1] annexed to the note.

The mortgage, recorded in January 2007, listed only Eastern American as having an interest in the Property. The mortgage did not mention Deutsche Bank's interest in the Property.

Eastern American provided Deutsche Bank with an assignment of the mortgage. However, the assignment was not recorded because Deutsche Bank lost or misplaced the document. When Deutsche Bank realized the assignment was missing, it attempted to obtain a new assignment from Eastern American.

On July 1, 2010, the Borrowers defaulted on the note and mortgage.[2] Deutsche Bank filed a foreclosure complaint on May 2, 2013. In the foreclosure

[1] An allonge is a paper attached to a negotiable instrument, such as a note, providing space for additional indorsements. Black's Law Dictionary 95 (11th ed. 2015).

[2] In 2009, the Borrowers entered into a mortgage modification agreement with Deutsche Bank but were unable to make the monthly payments as modified.

A-0734-18T2

complaint, Deutsche Bank stated it owned the note and mortgage pursuant to an assignment from Eastern Mortgage but had misplaced the assignment.

When it filed the 2013 foreclosure complaint, Deutsche Bank also filed a lis pendens on the Property. The lis pendens identified Deutsche Bank as the plaintiff in the 2013 foreclosure action and provided the docket number associated with that foreclosure proceeding.

In May 2017, Deutsche Bank obtained a new assignment of mortgage from Eastern American's former president. Deutsche Bank recorded the assignment on June 7, 2017.

Unbeknownst to Deutsche Bank, on June 28, 2011, U.S. Bank purchased Tax Sale Certificate No. 2012-000297 (Certificate) from the City of Paterson in the amount of $183.20. The Certificate, recorded on October 21, 2011, was issued because the Borrowers failed to pay taxes on the Property.

On December 15, 2015, prior to filing a tax sale foreclosure complaint, U.S. Bank conducted a title search on the Property. The title search disclosed the mortgage on the Property, the Certificate, and Deutsche Bank's 2013 lis pendens. U.S. Bank's discovery of the 2013 lis pendens revealed Deutsche Bank as the named plaintiff in the pending 2013 foreclosure action against the Property.

On January 20, 2016, U.S. Bank filed a tax sale foreclosure complaint but did not name Deutsche Bank as a defendant. The next day, U.S. Bank filed a lis pendens on the Property.

U.S. Bank purportedly served Eastern American with the tax sale foreclosure complaint on March 26, 2016. A courtesy copy of the tax sale foreclosure complaint was sent to a prior law firm listed on Deutsche Bank's 2013 foreclosure complaint and lis pendens. However, the firm receiving the courtesy copy of the tax sale foreclosure complaint did not represent Deutsche Bank in 2016 and never represented Eastern American.[3]

On June 23, 2016, U.S. Bank filed a notice to redeem the Certificate. The redemption notice was sent to the law firm which represented Deutsche Bank prior to 2015. Deutsche Bank was never personally served with the tax sale foreclosure complaint or redemption notice.

On July 25, 2016, U.S. Bank assigned the Certificate to plaintiff. On that same day, the trial court entered an order setting the time, place, and amount of the redemption for the Certificate. Plaintiff served the order only on the defendants named in the tax sale foreclosure complaint. Deutsche Bank never

---

[3] In 2015, a different law firm filed a substitution of attorney for Deutsche Bank in the 2013 foreclosure action.

A-0734-18T2

received the redemption order and the copy of the order sent to Eastern American was returned to plaintiff as "unclaimed."

Because the tax sale foreclosure complaint was uncontested, on February 23, 2017, the trial court entered a final judgment by default for plaintiff.

Deutsche Bank subsequently learned of plaintiff's final judgment by default and, on December 14, 2017, filed a motion to vacate the judgment. Plaintiff opposed the motion, claiming Deutsche Bank had no recorded interest in the Property during pendency of the tax sale foreclosure action.

The motion judge heard oral argument on Deutsche Bank's motion to vacate the final default judgment. Relying on Rule 4:50-1, the judge vacated the default judgment in the tax sale foreclosure action and allowed Deutsche Bank to file a contesting answer. The judge held "[g]iven the facts of this case, to deny Deutsche Bank the opportunity to protect its interest would only serve to unjustly enrich the plaintiff." The judge concluded:

> it behooved [plaintiff] to further research the identity of the actual lender, whose interest it was seeking to foreclose; rather, [plaintiff] simply seeks to rely upon the original recorded mortgage as justification for its failure to ignore the public record and court's docket or otherwise exercis[e] reasonable diligence and prudence to [at] a minimum contact[] prior foreclosure counsel listed on the recorded lis pendens. So[,] . . . [plaintiff] should have contacted the foreclosure counsel listed on the lis pendens, which [plaintiff] subsequently did do[,]

because they would have been able to investigate the relationship between Eastern Mortgage Co. and Deutsche Bank, given the previously filed complaint, amended complaint, and recorded lis pendens. Instead of doing that, [plaintiff] seeks to wipe out the mortgage of Deutche Bank in the within tax foreclosure action and judgment and [plaintiff] now seeks to be unjustly enriched from its prior acquisition of tax certificate, far less than the value of the subject property[,] by attempting to complete a sale to a third-party purchase[r] while denying Deutsche Bank the opportunity to redeem the certificate in question and satisfy [plaintiff]'s interest, which was all it [c]ould have otherwise been entitled to recoup under the tax sale laws.

The judge determined:

The entire purpose of the tax foreclosure process is to insure the timely and full payment of all outstanding property taxes to municipalities. The mechanism for such payment is the tax foreclosure process, which allows towns to realize such tax payments while permitting third parties the opportunity to realize a significant return on their investment and[,] under the statute, it's as high as [eighteen] percent.

In vacating plaintiff's final judgment, the judge explained:

[Rule 4:50-1] is intended to be utilized in exceptional circumstances such as presently before the [c]ourt where a default judgment, if otherwise allowed to stand, would inflict an extremely inequitable and unfair outcome upon the mov[ing] party, which in this case would be the total and complete elimination of this otherwise properly perfected mortgage lien secured by the property. The [c]ourt finds that [it] is vested with such equitable power to vacate such [a] judgment upon

7

such exceptional circumstances, given the procedural history of this matter and where [plaintiff] certainly never intended or reasonably expected to be in line for such an unjustified windfall to the detriment of Deutsche Bank.

On appeal, plaintiff argues the judge lacked the equitable power to deviate from N.J.S.A. 54:5-89.1. Plaintiff contends N.J.S.A. 54:5-89.1 mandates that a party with an unrecorded interest at the time of the tax sale foreclosure action is bound by the proceedings and automatically joined in the lawsuit and any ultimate judgment entered. Plaintiff also asserts it had no duty to investigate Deutsche Bank's interest in the Property because the assignment to Deutsche Bank was not recorded as of the filing date of the tax sale foreclosure action.

We review a trial court's decision to vacate a final judgment pursuant to Rule 4:50-1 for abuse of discretion. U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012); see also Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966) ("That discretion is a broad one to be exercised according to equitable principles, and the decision reached by the trial court will be accepted by an appellate tribunal in the absence of an abuse of its discretion."). While intended to be used sparingly, Rule 4:50-1(f) may be applied in exceptional situations "to provide relief from judgments . . . in which, were it not applied, a grave injustice would occur." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 289 (1994).

However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Vacating the final default judgment in this matter is consistent with the intent and purpose of the Tax Sale Law (TSL), N.J.S.A. 54:5-1 to -137. The TSL is "designed to enhance the collection of taxes." Savage v. Weissman, 355 N.J. Super. 429, 435-36 (App. Div. 2002) (citations omitted) ("A tax sale certificate is not an outright conveyance. It creates only a lien on the premises and conveys the lien interest of the taxing authority. . . . [T]he interest of the holder of the tax sale certificate is entirely subordinate to the statutory right of redemption of the property owner.").

Our Supreme Court has held the TSL's "primary purpose . . . is not to divest owners of their property, but to provide a method for collecting taxes." Sonderman v. Remington Constr. Co., 127 N.J. 96, 109 (1992). As we noted in Phillipsburg v. Block 1508, Lot 12, 380 N.J. Super. 159, 162 (App. Div. 2005), "courts have looked with disfavor on those . . . who would take advantage of the [TSL] to obtain a windfall at the expense of persons who either might be unaware or unable to take advantage of their own rights and interests in the property."

The TSL is intended "to give the property owner the opportunity to redeem the certificate and reclaim his land." Simon v. Cronecker, 189 N.J. 304, 319 (2007). Purchasers of tax sale certificates know "from the start that most tax certificate investments end not in windfall profits from foreclosure but rather in high yield interest returns upon redemption." Id. at 329.

Plaintiff seeks to invoke N.J.S.A. 54:5-89.1 to bar Deutsche Bank from filing an answer and redeeming the Certificate because the assignment from Eastern American was not recorded until 2017, after plaintiff filed its tax sale foreclosure complaint. Plaintiff argues the statute, providing for finality of its judgment against Deutsche Bank's unrecorded interest in the Property, prevails over Rule 4:50-1, providing relief from judgments.

N.J.S.A. 54:5-89.1 provides, in part, as follows:

> In any action to foreclose the right of redemption in any property sold for unpaid taxes . . . , all persons claiming an interest in . . . such property, by or through any . . . lien . . . which, . . . could be recorded . . . , and which shall not be so recorded . . . at the time of the filing of the complaint in such action shall be bound by the proceedings in the action . . . .

A notice of lis pendens shall "be filed and recorded for subsequent interest takers to have constructive notice of the pendency of a lawsuit and to take subordinate to the rights the plaintiff derives in the outcome of the litigation."

Manzo v. Shawmut Bank, N.A., 291 N.J. Super. 194, 199 (App. Div. 1996) (citations omitted). "The primary purpose of the notice of lis pendens is to preserve the property which is the subject matter of the lawsuit . . . so that full judicial relief can be granted, if the plaintiff prevails." Id. at 200. The filing of a lis pendens "provides constructive notice to subsequent interest takers in the property that a dispute exists concerning rights to the property." Ibid.

Here, the 2013 lis pendens gave notice that Deutsche Bank had a dispute related to the Property based on its 2013 foreclosure action. Plaintiff knew of Deutsche Bank's filed and recorded 2013 lis pendens through a title search conducted prior to the filing of the tax sale foreclosure action. The 2013 lis pendens evidenced Deutsche Bank's foreclosure action to enforce its lien against the Property and provided sufficient information to identify Deutche Bank's interest in the Property. Having reviewed the record, we agree the judge did not abuse his discretion by vacating plaintiff's final judgment and allowing Deutsche Bank to file a contesting answer.

Under these unique circumstances, it would have been unfair, inequitable, and resulted in a grave injustice if the final default judgment had not been vacated, especially in light of the significant monetary difference between the

11

cost to redeem the Certificate and the value of Deutsche Bank's interest in the

Property.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0734-18T2