**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3023-19

ROMEL SILAND,

    Plaintiff-Appellant,

v.

RAPHAEL A. CRANDON,

    Defendant-Respondent.

_____

Submitted January 26, 2021 – Decided March 19, 2021

Before Judges Moynihan and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000025-20.

Miller, Meyerson & Corbo, attorneys for appellant (Gerald D. Miller, on the briefs).

Michael C. Schonberger, attorney for respondent.

PER CURIAM

    Plaintiff Romel Siland appeals from the trial court's order denying his application for an order to show cause "seeking[,] among other relief[,] specific

enforcement of an agreement" he and defendant Raphael A. Crandon entered for the sale of a two-family house in Jersey City, imposition of a lien on that property and an injunction against the sale of the property to a third party; and sua sponte dismissing without prejudice plaintiff's earlier-filed complaint seeking like relief. We agree with plaintiff that the trial court erred in denying injunctive relief and dismissing the complaint and reverse.

The June 11, 2009 contract[1] called for the property to be sold for "$210,000 of which $166,457.75 [was] the unpaid principal balance" of defendant's mortgage note to a lender, a deposit of $40,000 and $3,542.25 listed as "[u]pon obtaining financing." Plaintiff averred he had made monthly payments of $1,488.20 on the note from June 2009 through February 2020; paid all taxes; maintained insurance on the property; and made repairs, including to a water line, as required by the contract.

On September 20, 2019, defendant wrote to plaintiff, informing him that the property would be listed for sale. On December 20, 2019, defendant contracted with a third-party purchaser to sell the property for $320,000. On

---

[1] Inexplicably, the contract was also referred to as a "mortgage" to the lender and defendant, "mean[ing] that [plaintiff] give[s] the [lender] and [defendant] those rights stated in this [m]ortgage and also those rights the law gives to [the lender] and [defendant] who hold mortgages on real property."

February 7, 2020, plaintiff filed his complaint; on the same day, he filed a lis pendens. Six days later, plaintiff filed the order-to-show-cause application. Although the court required that plaintiff serve defendant with the order to show cause within five days, defendant was not served until February 21, 2020. Defendant transferred title to the property to the third-party on February 19, 2020. Plaintiff amended his complaint on March 23, 2020, to include the third-party purchaser and the title company used in that transaction as additional defendants. On the March 27, 2020 return date, the court delivered its oral decision denying the application for the order to show cause and sua sponte dismissing the complaint and entered the order on appeal.

We review the denial of an application for a preliminary injunction under the abuse-of-discretion standard, determining whether the trial court correctly applied the four-prong test of Crowe v. De Gioia, 90 N.J. 126, 132-34 (1982), when ruling on the application. Rinaldo v. RLR Inv., LLC, 387 N.J. Super. 387, 395 (App. Div. 2006).

The trial court analyzed the four Crowe factors an applicant must demonstrate by clear and convincing evidence, Garden State Equal. v. Dow, 216 N.J. 314, 320 (2013): 1) a showing that the injunction is necessary to prevent irreparable harm; 2) the legal right underlying the applicant's claims is settled;

A-3023-19

3) "a preliminary showing of a reasonable probability of ultimate success on the merits"; and 4) consideration of "the relative hardship to the parties in granting or denying" the application, Crowe, 90 N.J. at 132-34.

The trial court ruled plaintiff had not satisfied the first Crowe factor because he had an adequate remedy at law. The court noted a "certification provided by the defendant, [stated] the property was sold to a third-party purchaser" and "if the defendant breached the contract of sale" damages could be "readily ascertainable and calculable" based on the fixed amount plaintiff alleged he had paid monthly.

Melding the second and third prongs, the trial court found plaintiff's right to specific performance was "questionable" because plaintiff had presented no proofs to establish he satisfied a contract term that required him to "obtain financing within two (2) years." The court noted defendant's allegations, "both factual and equitable, includ[ed] rightful termination by . . . defendant, failure of consideration, statute of limitations, waiver and la[]ches[,]" and concluded, "[o]bjective review of the record and evidence presented by both, strongly suggest that the viability of [defendant's] claims -- and requires, therefore, the denial of the injunctive relief."

A-3023-19

Addressing the fourth prong, the trial court noted defendant's certification provided "the property has been sold to a Benum Gross, a third-party purchaser, for $320,000[,]" but then found "[s]ufficient, persuasive, and credible evidence ha[d] been provided by means of the HUD-1 [closing statement] to substantiate the assertion that 52 Harrison[] LLC, [was] a bona fide purchaser for value." The court concluded divesting the third-party of the property "would be inequitable on the record set forth before this [c]ourt by the plaintiff."

The court dismissed plaintiff's complaint, adding that action did "not deprive plaintiff of a remedy" because he could "refile in the Law Division for any alleged breach of contract, and seek the readily calculable compensatory damages in that Division."

An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). When exercising legal discretion, the trial court "must take account of the law applicable to the particular circumstances of the case and be governed accordingly." Kavanaugh v. Quigley, 63 N.J. Super. 153, 158 (App. Div. 1960). If the trial judge misapplies the law to the factual

circumstances before him or her, "the exercise of the legal discretion lacks a foundation and becomes an arbitrary act." Ibid. We perceive misapplications in the trial court's analysis of each Crowe factor.

Although the court recited our holding in Friendship Manor, Inc. v. Greiman, 244 N.J. Super. 104, 113 (App. Div. 1990), that there was a virtual presumption that specific performance was the appropriate remedy for a seller's breach of a contract to sell real property because of the unique character of realty, it ignored that precept and concluded plaintiff had an adequate monetary remedy. The trial court's decision did not consider our Supreme Court's holding that

> [e]quity's jurisdiction to award specific performance of a contract is exercisable unless the remedy at law is adequate and complete and as efficient as the remedy of specific enforcement. Mantell v. Int'l Plastic Harmonica Corp., 141 N.J. Eq. 379 (E & A 1947). In the language of Lord Selborne, the ruling principle is that specific performance will be given if it will "do more perfect and complete justice." Wilson v. Northampton & Banbury Junction Ry. Co., (1874) 9 Ch. A.C. 279 at 284 (Eng.). The "foundation and measure" of the jurisdiction, said Professor Pomeroy, "is the desire to do justice, which the legal remedy would fail to give"—complete justice to both parties "with respect to all the judicial relations growing out of the contract between them." Pomeroy's Equity Jurisprudence §1401 (5th ed. 1941).

[Fleischer v. James Drug Stores, Inc., 1 N.J. 138, 146 (1948).]

It is plain that money damages would not be as adequate, complete and efficient as specific performance in this case where plaintiff had paid defendant's mortgage note, real estate taxes, insurance premiums and upkeep on the property for over ten years while making the property his home. The property is certainly unique to plaintiff. Pruitt v. Graziano, 215 N.J. Super. 330, 331 (App. Div. 1987) ("Presumptively, real property is unique and damages at law are an inadequate remedy for breach of a contract to sell it. A factual resolution of uniqueness of the real property is immaterial.").

In adopting defendant's submission and finding that plaintiff failed to prove it had obtained financing, and by accepting—ostensibly without documentary proof—defendant's allegation he had terminated the contract, the trial court did not adhere to the principle that it was

> required to do more than merely determine whether the contract is valid and enforceable; the court of equity must also "appraise the respective conduct and situation of the parties," Friendship Manor, 244 N.J. Super. at 113, the clarity of the agreement itself notwithstanding that it may be legally enforceable, Salvatore v. Trace, 109 N.J. Super. 83, 90 (App. Div. 1969), and the impact of an order compelling performance, that is, whether such an order is harsh or oppressive to the defendant, Stehr v. Swayer, 40 N.J. 352, 357 (1963), or whether a

A-3023-19

> denial of specific performance leaves plaintiff with an adequate remedy, Fleischer, 1 N.J. at 146-47.
>
> [Marioni v. 94 Broadway, Inc., 374 N.J. Super. 588, 600 (App. Div. 2005).]

The factors that should have been considered included any evidence or lack thereof that defendant terminated the contract; and the reason, if he had terminated the contract, defendant sent plaintiff a notice of his intention to sell the property. Moreover, the trial court did not consider the mode of enforcement of the financing provision that required defendant to declare plaintiff in default "on the [n]ote and this [m]ortgage" if he "fail[ed] to keep any promise [made] in this [m]ortgage." Again, "mortgage" was used interchangeably with "[a]greement" in the contract so plaintiff's promises seemingly included the financing provisions. We see nothing in the record establishing that defendant declared plaintiff in default as per the contract terms. And, there was no specific stated time for obtaining the financing; there is nothing in the record that defendant ever declared time to be of the essence. See Paradiso v. Mazejay, 3 N.J. 110, 114 (1949) (holding where time is not specifically made of the essence in a parties' agreement, "the intention of the parties to make it so must be clearly spelled out either by an examination of all the surrounding circumstances or by supplemental notice from one party to the other"); see also Marioni, 374 N.J.

Super. at 603. The absence of a notice of default or that time was of the essence evidenced the parties' conduct and situation that should have been considered in determining if specific performance was appropriate.

So too, the fact that defendant stood by while plaintiff paid defendant's expenses should have been weighed by the trial court as impacting the equities of the case, including whether plaintiff established an equitable lien on the property, or whether the parties' conduct amounted to a waiver of or novation from the contract-financing terms timeframe. Even if time for obtaining financing was of the essence—and we see no evidence it was—a party's inconsistent action constitutes "a waiver . . . and the parties will be deemed to have extended the time for performance for a reasonable period of time[.]" Marioni, 374 N.J. Super. at 607-08.

As Judge Fisher explained in Marioni, 374 N.J. Super. at 601:

> These equitable considerations—that is, how clearly have the parties expressed their contractual undertaking, whether the impact of compelling performance will be unduly oppressive or whether the withholding of the remedy will leave the plaintiff with an inadequate remedy, and whether the parties have acted equitably toward each other, among others—pour content into what is meant by the "discretionary" nature of specific performance. It is not a discretion that depends upon "the mere will and pleasure of the judge; nor does it depend upon his own individual opinion, as to its propriety and feasibility; much less is it a matter

of favor." Pomeroy, Specific Performance of Contracts § 36 at 114 (3d ed. 1926). Instead, the court must exercise judicial discretion-a discretion "controlled and governed by the principles and rules of equity." Ibid.

The trial court abused its discretion by departing from established principles of law and equity and by failing to consider the totality of the circumstances that resulted from the parties' full actions.

The court also erred by declaring the ultimate buyer, 52 Harrison LLC,[2] a bona fide purchaser. The HUD-1 statement relied upon by the court contained no proof that the third-party purchaser qualified as a bona fide purchaser.

A bona fide purchaser for value is one who takes title to property without notice of a prior interest "and has paid a valuable consideration therefor." Venetsky v. W. Essex Bldg. Supply Co., 28 N.J. Super. 178, 187 (App. Div. 1953); see also Monsanto Emps. Fed. Credit Union v. Harbison, 209 N.J. Super. 539, 542 (App. Div. 1986). The third-party purchaser was on notice of plaintiff's claim by virtue of the lis pendens plaintiff filed twelve days before the third-party purchaser closed on the property.

When an individual or entity contracts to purchase property, they have the duty to check the entire record of that property "from the date the deed into [the

---

[2] The buyer listed on the HUD-1—"52 Harrison LLC"—differs from the buyer listed in the contract—Binem Gross.

seller] was recorded until the date he relinquishes record title." Palamarg Realty Co. v. Rehac, 80 N.J. 446, 456 (1979). "A purchaser may well be held bound to examine or neglect at his peril, the record of the conveyances under which he claims[.]" Glorieux v. Lighthipe, 88 N.J.L. 199, 203 (E. & A. 1915). As such, the third-party purchaser was on constructive notice that there was a dispute concerning rights to the property. Manzo v. Shawmut Bank, N.A., 291 N.J. Super. 194, 200 (App. Div. 1996); see also N.J.S.A. 2A:15-7. Contrary to defendant's argument that the lis pendens was filed prematurely, it was filed just after the complaint was filed; it thus fully complied with N.J.S.A. 2A:15-6.

The record fails to support the trial court's conclusion regarding the third-party purchaser's status. It follows that the trial court's determination that divestment of the property would be inequitable to that purchaser is also unsupported because the purchaser took title with constructive notice of plaintiff's claim of interest in the property.

These errors require reversal of the trial court's denial of plaintiff's application for an order to show cause.

The trial court did not set forth the grounds for sua sponte dismissing plaintiff's complaint.[3]  The dismissal immediately followed the court's finding that 52 Harrison LLC was a bona fide purchaser.  If the trial court's dismissal of plaintiff's complaint was based in that finding—which we determine was without evidential support—that aspect of the order must also be reversed.

This was not, as defendant contends in his merits brief, a summary action. If that was the ground for the dismissal order, it cannot stand.

Our Supreme Court made clear that a trial court may grant summary disposition under 1) Rule 4:67-1 governing "all actions in which the court is permitted by rule or by statute to proceed in a summary manner,"[4] such as actions brought under the New Jersey Open Public Records Act, N.J.S.A. 47:1A-6, or actions to compel arbitration under N.J.S.A. 39:6A-11; or 2)

> in all other Superior Court actions "other than matrimonial actions and actions in which unliquidated monetary damages are sought," Rule 4:67-1 applies "provided it appears to the court, on motion made pursuant to R. 1:6-3 and on notice to the other parties to the action not in default, that it is likely that the matter may be completely disposed of in a summary

---

[3]  Even if the court was correct in disposing of the application for injunctive relief—which we neither conclude or even suggest—it should have transferred the action to the Law Division instead of dismissing it.

[4]  Rule 4:67-1 excludes "actions for the recovery of penalties which shall be brought pursuant to R. 4:70[.]"

manner." R. 4:67-1. Summary disposition is permitted by agreement of the court and the parties, evinced by "a clear and unambiguous statement from the judge and the unequivocal consent of the parties to a final resolution . . . ." Waste Mgmt. of N.J., Inc. v. Union Cnty. Utils. Auth., 399 N.J. Super. 508, 518-19 (App. Div. 2008).

[Grabowsky v. Twp. of Montclair, 221 N.J. 536, 550 (2015).]

The procedural requirements noted by the Court "permit the presentation of a factual record and legal arguments to the court, and . . . ensure that the parties anticipate and address the standard for summary disposition before the court decides whether to grant that relief." Ibid.

As in Grabowsky, neither party sought nor consented to summary disposition of the action. Ibid. And, as in that case, plaintiff was not on notice that his case stood to be dismissed, and he was not afforded an opportunity to oppose summary disposition or present a record in opposition. Ibid. The proceedings on the return date of the order to show cause consist of nothing but the trial court's nine-minute oral decision placed on the record beginning at 8:12 a.m.; there were no appearances by the parties or their counsel.[5] "The minimum

---

[5] The order to show cause provided that the trial court would "entertain argument, but not testimony, on the return date of the order to show cause, unless the court and parties are advised to the contrary no later than [three] days before

requirements of due process of law are notice and an opportunity to be heard[,] . . . mean[ing] an opportunity to be heard at a meaningful time and in a meaningful manner." Klier v. Sordoni Skanska Constr. Co., 337 N.J. Super. 76, 84 (App. Div. 2001). The trial court's sua sponte dismissal contravened those principles.

Of course, a trial court has discretion to convert an application for a temporary restraining order into a motion for summary judgment. See Concerned Citizens of Borough of Wildwood Crest v. Pantalone, 185 N.J. Super. 37, 48 (App. Div. 1982) (determining that a trial court has discretion to convert an application for injunctive relief into a motion for summary judgment on the return date of an order to show cause when there are no material facts in dispute). But, as we have delineated, material facts in this case are in dispute. Hence, summary judgment would have been an inappropriate disposition, and if that was the trial court's basis for dismissal, it must be reversed.

We therefore reverse the order in its entirety and remand this matter for a hearing on the order to show cause. Because the trial court has expressed an opinion on the merits of this case, we direct that the hearing be conducted before

_____

the return date." The record does not reflect any advice to the contrary. Nevertheless, there is no indication in the record that plaintiff was on notice that his complaint was in jeopardy on the return date.

14

a different judge.  <u>See</u> <u>Entress v. Entress</u>, 376 N.J. Super. 125, 133 (App. Div. 2005).

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3023-19