**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2384-21

US BANK CUST FOR PC7
FIRSTRUST BANK, and
PC7REO LLC,

  Plaintiffs-Respondents,

v.

BLOCK 5.04, LOT 16
336 WHITE HORSE PK,
BOROUGH OF MAGNOLIA,
ASSESSED TO SAM'S
ROUTE 73, LLC,

  Defendant-Appellant.

_____

   Argued November 9, 2023 - Decided December 15, 2023

   Before Judges Accurso and Gummer.

   On appeal from the Superior Court of New Jersey,
   Chancery Division, Camden County, Docket No. F-
   010707-18

   William C. MacMillan argued the cause for appellant
   (Law Offices of Igor Sturm, attorneys; William C.
   MacMillan, on the briefs).

Robin I. London-Zeitz argued the cause for respondent PC7REO LLC (Gary C. Zeitz, LLC, attorneys; Robin I. London-Zeitz, on the brief).

PER CURIAM

This tax sale matter returns to us following our vacation of the tax sale judgment, reversal of the abandonment order on which it was premised and remand for an evidentiary hearing on whether the property could be properly determined abandoned in accordance with the Abandoned Properties Rehabilitation Act, N.J.S.A. 55:19-81. US Bank Cust v. Block 5.04, Lot 16 336 White Horse Pike, Borough of Magnolia, No. A-2362-18 (App. Div. July 22, 2020) (slip op. at 1).

As noted in our prior opinion, plaintiff US Bank Cust for PC7 Firstrust Bank[1] purchased tax sale certificates in December 2017 on two properties assessed to defendant Sam's Route 73, LLC, one in Oaklyn and the other in Magnolia, over which Sam's was embroiled in litigation in Pennsylvania, resulting in its failure to pay the property taxes on the parcels.[2] Ibid. Instead

_____

[1] Plaintiff US Bank Cust for PC7 Firstrust Bank subsequently assigned the certificate to PC7REO LLC. We refer to both entities throughout as plaintiff simply for ease of reference.

[2] Sam's acquired the properties in April 2016 as two of three parcels received as part of the consideration for the sale of a restaurant and liquor license in

2

A-2384-21

of waiting two years from the sale date to file actions to foreclose the certificates, plaintiff filed only five months after the sale, contending the properties had been abandoned.  Ibid.  See N.J.S.A. 54:5-86(b).

Although Sam's opposed plaintiff's application for a declaration of abandonment as to the Oaklyn parcel, putting the condition of the property in issue, the Chancery judge failed to conduct an evidentiary hearing applying the statutory criteria.  Block 5.04, Lot 16, slip op. at 8-9.  Because the judge summarily declared the property abandoned without a hearing despite the contested record, a "determination . . . pivotal to whether plaintiff was entitled to seek foreclosure when it did," we deemed "all that followed must be vacated."  Id. at 10.  And while Sam's hadn't opposed plaintiff's abandonment motion in the tax foreclosure on the Magnolia property, we reversed the abandonment order and vacated the judgment in that case as well, finding "the judge's abandonment ruling in the Oaklyn matter demonstrated the futility of

---

Pennsylvania.  Block 5.04, Lot 16 (slip op. at 3-4).  Sam's maintained the Magnolia property was vacant when it acquired it and promptly listed it for sale.  The purchaser of the restaurant, however, filed suit in Pennsylvania to rescind the transaction based on alleged fraud.  The buyer subsequently filed a lis pendens against the Magnolia property — twice — complicating Sam's efforts to sell it.

A-2384-21

any opposition." Id. at 10 n.5. We issued our opinion addressing both appeals on July 22, 2020.

The following day, the Chancery judge entered an order for the exchange of reports and scheduled an evidentiary hearing for December 17 in both matters. A little over two weeks before the hearing, counsel for Sam's wrote to the court advising Sam's no longer contested plaintiff's right to foreclose the tax certificate on the Oaklyn property, and that plaintiff's undisclosed sale of the Magnolia property to a third-party, Avi Financial, LLC, while the appeal was pending "rendered an evidentiary hearing in [that] . . . matter entirely moot."[3]

Specifically, counsel contended that plaintiff's sale of the Magnolia property to Avi, over the lis pendens Sam's had filed against the property, had "nullified and extinguished" Sam's right to redeem the tax sale certificate on the Magnolia property, which otherwise "would have existed from the issuance" of our opinion "up until a time that any final judgment [on remand] would have been entered, irrespective of whatever the outcome of the evidentiary hearing." Counsel advised the court the Pennsylvania litigation

---

[3] As Sam's abandoned any interest in the Oaklyn action on remand, this appeal is limited to the tax sale foreclosure on the Magnolia property.

had been settled "and there no longer exist[ed] any impediment to the redemption of the tax sale certificate, aside from the fact that plaintiff has sold the property and the underlying tax sale certificate debt no longer exists."

According to defendant's counsel, Sam's was "no longer a 'person' entitled to redeem the tax sale certificate" pursuant to N.J.S.A. 54:5-54, "because it [was] no longer the owner of the property." Counsel advised the Chancery judge that Sam's had already filed a complaint in the Law Division for damages in response to plaintiff's "tortious actions," and "submitted that [this foreclosure] matter should be dismissed as moot."

Counsel for plaintiff immediately wrote to the court in response, explaining our decision vacating the judgments in both matters revested title in Sam's, reviving its right to redeem the certificates until entry of final judgment on remand in accordance with N.J.S.A. 54:5-86(a). Counsel also noted there was no stay preventing plaintiff's sale of the Magnolia property to Avi, which took title over the lis pendens with full knowledge it could be divested of title were plaintiff successful on appeal.

Plaintiff's counsel pointed out that we'd ordered the trial court to conduct an evidentiary hearing on remand, and that plaintiff was ready to go forward on the scheduled date. If, however, Sam's had no interest in participating in

the evidentiary hearing as to the abandonment of the Magnolia property, counsel asked that the court enter an order again declaring it abandoned. Finally, counsel asked the court to disregard defendant's "misguided attempt" to cancel the evidentiary hearing with respect to the Magnolia property.

Counsel for Sam's replied, expressing Sam's position that as to the Oaklyn property, "a determination of abandonment by an evidentiary hearing" would be "of no moment" as "[t]wo years from the tax sale date" had long since passed, meaning "plaintiff can now foreclose as of right as to the Oaklyn property." As to the Magnolia property, counsel asserted plaintiff sold it for $150,000.00 in May 2019, when only $25,791.78 was due on the tax lien when final judgment was entered in September 2018. Counsel again insisted Sam's was "no longer the owner of the Magnolia property, and as such, has no statutory right to redeem the tax sale certificate, even if it was still viable, which it is not." Counsel maintained Sam's position that plaintiff's sale of the Magnolia property to Avi rendered an evidentiary hearing "entirely moot" and that the foreclosure action should be dismissed.

The Chancery judge responded to that exchange of letters by cancelling the evidentiary hearing and signing an "unopposed" order on December 14, 2020, declaring the property abandoned, and that Sam's "right to redeem shall

6

exist until barred by a final judgment of foreclosure pursuant to N.J.S.A. 54:5-86(a) and N.J.S.A. 54:5-104.64(a)."

Plaintiff moved for entry of final judgment four days later. Sam's opposed the motion. Sam's contended final judgment should be denied because the tax sale certificate had been cancelled, as a matter of law, on "plaintiff's filing of the judgment of January 9, 2019 with the Camden County Clerk; that as a result of plaintiff's sale of the property on May 23, 2019, and receipt of payment, the opinion and order of the Appellate Division of July 22, 2020, could not result in a reinstatement of the tax sale certificate"; that plaintiff, "having received the redemption amount, now lacks standing to bring [a] motion for final judgment"; and defendant's "statutory right to redeem prior to the entry of any final judgment has been nullified by plaintiff's sale" of the property, as defendant no longer qualified as "a 'person' entitled to redeem under N.J.S.A. 54:5-54." Sam's did not file a cross-motion to vacate or have the court reconsider the court's abandonment order on remand.

In its reply papers, plaintiff explained the prior judgment only foreclosed Sam's right of redemption of the tax sale certificate, see N.J.S.A. 54:5-104.64(a); Varsolona v. Breen Capital Servs. Corp., 180 N.J. 605, 618 (2004), and that the certificate did not merge into the final judgment, as in a mortgage

foreclosure, see Realty Asset Props., Ltd. v. Oldham, 356 N.J. Super. 16, 25 (App. Div. 2002) ("Although applicable in traditional mortgage foreclosure proceedings, the doctrine of merger has never been applied to the foreclosure of tax sale certificates."). Plaintiff also explained the certificate was not redeemed on plaintiff's sale of the property to Avi, and it remained in existence. Plaintiff reiterated that our opinion reversing the final judgment of foreclosure revested title in Sam's, and the abandonment order the court entered on remand made clear Sam's had a continued right of redemption until entry of a new final judgment.

The court heard argument on the motion in January 2021. Plaintiff's counsel again explained that our vacatur of plaintiff's judgment restored the matter to the status quo ante — plaintiff held a tax sale certificate on the Magnolia property, which Sam's had not redeemed and appeared not inclined to do so. Counsel contended the court's entry of the abandonment order on remand thus left nothing to do but enter final judgment barring Sam's right of redemption.

Counsel for Sam's did not argue about the entry of the July 2018 abandonment order entered two-and-a-half years earlier or the one the court had entered the month before on remand. He contended the only point to an

8

abandonment finding is to allow the plaintiff to shorten the time it must wait to file to foreclose its tax sale certificate, stating: "that's all . . . past. It's all — it's all gone." He asserted the matter was moot because plaintiff sold the property to Avi, that there was no point to the entry of final judgment, and plaintiff's motion was only "some type of effort to improve [its] position with regard" to Sam's Law Division action.

The judge stated she was not prepared to rule on the motion. Acknowledging consternation over plaintiff ignoring it had sold the property to Avi, the judge expressed the view that "because [Avi is] now the title holder and . . . plaintiff sold the property to them, they need to be the ones that would come in to get a final judgment of foreclosure against the former owner," Sam's. When plaintiff's counsel explained plaintiff had not assigned the tax sale certificate to Avi, the court stated that plaintiff needed to disclose its sale agreement with Avi, and that the court would need to undertake "a lot more research" to "figure out how . . . plaintiff . . . can . . . retain its tax sale certificate and yet sell the property and transfer title to a third-party." The trial court never ruled on that motion.

Having waited over eleven months for a ruling on its motion for final judgment, plaintiff in December 2019 filed a "motion to determine the rights

9

of the parties." Plaintiff sought an order "delineating the rights of the parties, including Avi," in light of our 2020 opinion, which it suggested could "be recorded to clarify the title," and "setting a deadline for the court to consider plaintiff's application for final judgment." Sam's filed a cross-motion asking the court to vacate the abandonment order on remand and dismiss the tax foreclosure as moot.

In support of its cross-motion, Sam's counsel submitted a certification explaining his letters to the court prior to the scheduled evidentiary hearing a year earlier where he'd expressed that plaintiff's sale to Avi, "in [counsel's] considered opinion, [meant] there was no need for the court to conduct a hearing on the issue of 'abandonment' on a property . . . [Sam's] no longer owned." Counsel contended that notwithstanding the court having marked the motion "unopposed," Sam's "in no uncertain terms, did oppose the entry of that order." Counsel insisted his letters "made it entirely clear that, based upon the sale of the property by plaintiff, an evidentiary hearing on the issue of 'abandonment' had been rendered moot," but that "defendant always intended, and never waived its right, to participate in the evidentiary hearing that was scheduled for December 17, 2020, in the event the court did not agree with defendant's position." Sam's counsel contended "the December 14, 2020 order

10

determining . . . the property was abandoned," which was "entered without any hearing[,] three days before the scheduled evidentiary hearing" and listed as "unopposed," was entered in error and should be vacated and the matter thereafter dismissed as moot.

Plaintiff responded to the cross-motion by attaching its agreement with Avi, whereby Avi acknowledged "that despite the recording of its deed," our prior opinion divested it of "any right, title or interest in or to the Property," and that in the event Sam's redeemed "the tax lien prior to the entry of a new final judgment," plaintiff would refund Avi its purchase price and reimburse it "for its ownership costs," which included $25,611.76 in real estate taxes through the end of 2021. The agreement further provided that in the event Sam's failed to redeem prior to the entry of a new final judgment, plaintiff would "(a) record the new final judgment, (b) prepare and record a quitclaim deed to Avi," and lastly, "(c) reimburse Avi for real estate taxes or other municipal charges paid by Avi for the 3rd quarter 2020, 4th quarter 2020, 1st quarter 2021, and 1st quarter 2022 to the date of a new final judgment."

The court entertained lengthy oral argument on the motions, during which Sam's counsel repeatedly told the court that Sam's "do[es]n't want the property back." Sam's counsel contended plaintiff wanted the judge "to

transfer the property back to [Sam's] so [plaintiff] can continue their tax foreclosure as if we've owned the property for the past three years, which we haven't." He explained that had Sam's "had the opportunity to sell the property during those three years, we would have sold it, paid that tax lien and put the $125,000 that [plaintiff's counsel's] client put . . . in their pocket, we would have put it in ours."

The court expressed its understanding that "Sam's doesn't want anything" and certainly did not want the court to void the deed to Avi. Plaintiff's counsel again tried to explain that Avi's deed had been voided, by operation of law, when we vacated plaintiff's final judgment and revested title in Sam's, and that what plaintiff wanted was to clear up the title to the property. In response, the court asked why plaintiff needed

> to clear up anything? They have no ownership
> interest, they sold it. . . . If I leave things the way they
> are, your client has no interest and it's Avi['s] . . .
> problem. They own it. If they go to sell it to
> somebody else and there's a problem with title, he's
> got to bring an action to clean it up, not you. The
> plaintiff has no interest. The defendant doesn't want
> it back. Why are we [going through all this?]

When plaintiff's counsel pointed out that Sam's was the one to ask the Appellate Division to reverse the tax sale judgment restoring its title, the judge asked then why wasn't Sam's "making this motion to make sure they no longer

have any ownership interest?" Plaintiff's counsel replied it was about the "novel theory" underlying Sam's Law Division action. Counsel asserted that Sam's didn't "want to redeem, they don't want to keep the property. They would rather sue [plaintiff] for . . . damages" arising out of plaintiff's sale to Avi during the pendency of the appeal, notwithstanding there was no stay to prevent Sam's from selling the Magnolia property.

Eventually, the court concluded that what plaintiff was attempting was "to go back and do it right this time without transferring out to an alleged bona fide purchaser, which put a monkey wrench in the whole thing." The court announced its intention to deny the motion to determine the rights of the parties, as those rights "have already been determined by the Appellate Division." It noted that although Sam's "doesn't seem to be interested in establishing the rights of [itself] in the property," the court was "not in a position to overturn" our opinion, which "speaks for itself" in that regard.

The court, however, continued that it was not inclined "to go back and start this case over again" because "it's clear" the sale to Avi divested Sam's interest in the property, and it did not "think that an order of the Appellate Division reestablishe[d] that ownership interest." Thus, the court announced it would not "do anything more" than tell plaintiff it could record our opinion

and would not vacate its [own] order. When Sam's counsel pointed out that we had already vacated the court's abandonment order for lack of a hearing and repeated Sam's request that the abandonment order on remand also be vacated, the court replied it could not "just vacate that order and not go back and have a hearing on the abandonment issue."

Plaintiff's counsel agreed the court should have a hearing on abandonment, and that Sam's, which had never submitted anything to the court on the abandonment criteria as to the Magnolia property should "submit something" in advance of the hearing. Sam's counsel then questioned the point of having "a hearing on abandonment over property [Sam's] no longer own[s]."[4] The court explained that exchange put the parties in the same position they had been in the first time, when Sam's advised the court it wasn't "interested in preserving any rights to the property." The court asked counsel what was the point of vacating the abandonment order, when Sam's had made clear it had no intention of redeeming the property this time either.

Sam's counsel confirmed Sam's did not want to redeem the property. He explained Sam's did not pay the taxes on the properties it received as payment

---

[4] During the colloquy on the abandonment issue, the judge informed Sam's counsel that "every time I get close to . . . granting your relief today — you push me back to the other side every time you talk."

A-2384-21

under the Pennsylvania purchase and sale agreement when its buyer sued to "unwind that transaction, . . . because we weren't sure how that [case] was going to come out." In addition to not wanting to redeem on remand, counsel explained Sam's also did not want plaintiff

> to be able to tidy up what happened here as if the foreclosure had been a proper foreclosure and we had had title to the property for the — nearly three years now — when we haven't had. And that is what [plaintiff's counsel is] attempting to achieve here, Judge. She wants to reconvey this property back, finish her foreclosure, charge us — if we want to keep the property that we haven't had for three years, she wants us to pay all of the taxes, all the interest on that plus get involved in a lawsuit with Avi if we want to maintain the property. So she wants to get that foreclosure and then use that to basically get our — our suit which we filed in the Law Division for damages resulting from the sale, the wants to use that as a defense to [the claims in the Law Division suit.]

The judge explained she was willing to provide Sam's with all the relief it wanted — to deny plaintiff's motion to determine the rights of the parties and to grant Sam's motion to declare the foreclosure action moot — but could not agree to vacate the abandonment order on remand because "[t]here's no reason to do that." The judge explained that order was

> the basis for my compliance with what the Appellate Division wanted me to do. So by me vacating that, it basically is saying to the Appellate Division, I'm going to thumb my nose at what you told me to do,

15

I'm vacating my order, I never had a hearing on the abandonment.

When's Sam's counsel reminded the judge that, "respectfully, you didn't have a hearing," the judge replied "I know.  I know I didn't have a hearing, but there was a reason I didn't have a hearing.  So, anyway, I'm not going to keep arguing about it."

The judge subsequently entered the order from which Sam's appeals, granting plaintiff's motion to determine the rights of the parties.  Although acknowledging our opinion reversing the final judgment and vacating the abandonment order on which it was premised, the trial court noted we were unaware plaintiff sold the property while the appeal was pending.  The court held that

> [t]o vacate the final judgment has the effect of voiding the deed from Plaintiff to Avi . . . which creates the inequitable result of vesting title back to . . . Sam's . . . .  If this is allowed, plaintiff would then need to refile its foreclosure action with the same result.  Since plaintiff . . . sold the property to Avi . . . in May 2019, . . . Sam's . . . would be unable to take title without some changes having been made to the property that [Sam's] may not have approved.[5]  [Sam's] does not wish to redeem the property.

---

[5]  In addition to paying taxes on the property of $25,611.76 as of January 2022, Avi's principal certified the company had also taken down trees at a cost of $7,500, removed all the blacktop at a cost of $30,000 and spent $5,400 in

The order provides the deed from plaintiff to Avi "is not void and remains in full force and effect"; title to the Magnolia property "is not revested in Sam's"; "[t]he final judgment of foreclosure previously submitted and pending before the court remains as standing"; and the tax foreclosure "is hereby dismissed." The court denied plaintiff's motion for clarification or reconsideration, other than to modify the last paragraph to state "the within matter is not dismissed and motions pending before the court to date are concluded."

Sam's appeals, arguing the failure to join Avi in alleged violation of Rule 4:5-1(b)(2) has led to a waste of judicial resources and caused Sam's to incur additional and unnecessary costs and expenses, that plaintiff lacked standing to continue its tax foreclosure after its sale of the property to Avi, and the court's abandonment order on remand was entered in error and should be vacated. None of these claims, all solely issues of law we review de novo, has

---

general maintenance and landscaping. He submitted a certification in support of plaintiff's motion to determine the rights of the parties urging that Sam's should be responsible for those costs and all others Avi incurred in connection with the property in the event Sam's redeemed the tax sale certificate. Neither Avi nor plaintiff provided any legal basis for such relief against Sam's, and we are not aware of one given the lack of privity between Sam's and Avi and that Avi took title from plaintiff over a recorded lis pendens.

any merit.  See Jeter v. Sam's Club, 250 N.J. 240, 251 (2022); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

To say the remand did not proceed as we envisioned would be a considerable understatement.  There is no question but that our reversal of the final judgment in this matter returned the parties to the status quo ante the trial court's ruling declaring the Magnolia property abandoned.  See Band's Refuse Removal, Inc. v. Fair Lawn, 64 N.J. Super. 1, 5 (App. Div. 1960) ("Ordinarily, an unconditional reversal of a judgment by an appellate court will restore the parties to the condition in which they were before suit was instituted."); see also State v. Figueroa, 186 N.J. 589, 596 (2006) (remanding for new trial returning defendant to status quo ante).  Title was revested in Sam's from the date of the issuance of our opinion by operation of law.  See M & D Assocs. v. Mandara, 366 N.J. Super. 341, 357 (App. Div. 2004) (explaining the effect of reversal of a tax sale judgment).

Although the trial judge was, of course, free to disagree about the wisdom or fairness of our having restored title to Sam's, the judge was not free to ignore our having done so.  See Jersey City Redevelopment Agency v. Mack Props. Co. No. 3, 280 N.J. Super. 553, 562 (App. Div. 1995) ("Trial judges are privileged to disagree with the pronouncements of appellate courts; the

18

privilege does not extend to non-compliance.") (quoting <u>Reinauer Realty Corp.</u> <u>v. Borough of Paramus</u>, 34 N.J. 406, 415 (1961)). We are not certain whether the judge's view of the equities was colored by her misunderstanding of the law, but we are quite certain that Avi, as it conceded in its agreement with plaintiff, was divested of title, notwithstanding the recording of its deed, as a result of our opinion in plaintiff's first appeal and the lis pendens statute. <u>See</u> N.J.S.A. 2A:15-7.

Avi took title with knowledge of the pendency of Sam's appeal of the tax judgment by virtue of the lis pendens Sam's recorded against the property. <u>See</u> <u>Trus Joist Corp. v. Treetop Assocs.</u>, 97 N.J. 22, 31 (1984) (noting the filing of a lis pendens "is constructive notice of a pending action concerning that real estate, and a purchaser . . . takes subject to the outcome of the lawsuit"). Thus, by operation of the lis pendens statute, Avi was "bound by any judgment entered therein, as though he had been made a party thereto and duly served with process therein."[6] N.J.S.A. 2A:15-7(a); <u>Manzo v. Shawmut Bank, N.A.</u>, 291 N.J. Super. 194, 200 (App. Div. 1996) (noting a lis pendens "binds subsequent interest takers to the outcome of the litigation"). Thus, contrary to

---

[6] The effect of the statute completely undermines Sam's argument that plaintiff violated <u>Rule</u> 4:5-1(b)(2) by failing to identify Avi as a person that needed to be joined pursuant to <u>Rule</u> 4:28.

Sam's counsel's repeated assertion, and the trial court's erroneous finding, Sam's was not divested of title by plaintiff's sale of the Magnolia property to Avi following our reversal of the tax judgment to plaintiff. Avi was divested of title by virtue of our opinion, which revested title in Sam's.

Sam's is also incorrect about plaintiff lacking standing to continue its tax foreclosure on remand. As we've noted, Sam's lis pendens bound Avi to our judgment on appeal, which reversed plaintiff's tax judgment and thus divested Avi's title to the property. Moreover, leaving aside that we reversed plaintiff's judgment, a tax certificate doesn't merge into the final "judgment; it subsists as the indicia of title." Wildwood Crest v. Smith, 210 N.J. Super. 127, 133 (App. Div. 1986). As Sam's never redeemed plaintiff's tax sale certificate, plaintiff certainly maintained its standing to pursue its tax foreclosure judgment on remand, foreclosing Sam's right to redeem it. See Varsolona, 180 N.J. at 618 (explaining the certificate holder's "three rights" as the right to receive what he paid for the certificate with interest at the redemption rate he bid at auction, the right to redeem any subsequent certificate, and the right to acquire title by foreclosing the owner's equity of redemption).

And contrary to Sam's assertions, plaintiff did not violate any law or court rule, of which we are aware, in selling the property to Avi over Sam's lis

20

pendens.  Whether improvidently entered or not, plaintiff's tax sale judgment vested fee simple title to the Magnolia property in plaintiff, with the concomitant right to sell it.  It is axiomatic that "[a]n appeal does not automatically stay a judgment."  Vassallo v. Bell, 221 N.J. Super. 347, 356 (App. Div. 1987).  Rule 2:9-5(a) requires that a judgment adjudicating the rights of the parties to property on appeal "shall be stayed only upon the posting of a supersedeas bond or other form of security pursuant to R. 2:9-6 or a cash deposit pursuant to R. 1:13-3(c), unless the court otherwise orders after notice and on good cause shown."

In order to have stayed the judgment, Sam's needed to have moved for a stay and posted a supersedeas bond in the sum required to indemnify plaintiff from loss "due to the delay occasioned by the appeal."  Hudson City Sav. Bank v. Hampton Gardens, Ltd., 88 N.J. 16, 23 (1981).  Here, that may well have been an amount equal to the real estate taxes on the Magnolia property for the estimated year to eighteen months plaintiff would be enjoined from selling the property during the pendency of the appeal.  See id. at 20 (describing a supersedeas bond "as a device to protect a party who has been successful at trial but has been forestalled from proceeding during an appeal").  As Sam's quite clearly was unwilling to redeem the certificate for an estimated $25,000

21

two months before the judgment was entered, which would have removed any risk of losing the Magnolia property to a tax judgment, it would appear unlikely to have posted a $15,000 supersedeas bond for the privilege of only staying the judgment while it pursued its appeal.

Moreover, had Sam's secured a stay, it would have been in the exact same position in which it was placed after our remand; that is, it could have redeemed plaintiff's certificate by paying plaintiff the sum it paid for the certificate with interest at the redemption rate, N.J.S.A. 54:5-58, all subsequent taxes, municipal liens and charges, and interest and costs, N.J.S.A. 54:5-60, and the redemption penalty, N.J.S.A. 54:5-61. See Varsolona, 180 N.J. at 619. Sam's, through counsel, repeatedly told the judge on remand that redemption was not an option it was interested in exercising, not only because it believed — erroneously — that it was not available, but also because it didn't want to have to repay the property taxes plaintiff and Avi had paid on the property since plaintiff's purchase of the tax sale certificate.

The way Sam's saw it, had plaintiff not succeeded on its abandonment claim, thereby shortening the two-year period plaintiff was required to wait to file its foreclosure action to five months, Sam's could have marketed the property and sold it to Avi or someone else during that two-year period and,

thus, could have pocketed the $125,000 Sam's contends plaintiff netted on the sale. There are a few obvious flaws in its theory.

First, it ignores that plaintiff was able to sell to Avi in May 2019, even over a lis pendens, because plaintiff's underlying title was clear, notwithstanding Sam's appeal. Sam's admits it was unsuccessful in selling the Magnolia property itself, which it put on the market shortly after its acquisition in April 2016, because of the pending Pennsylvania fraud action in which the plaintiff sought to rescind the transaction that vested title to the Magnolia property in Sam's. Sam's title was so unclear — even to Sam's — that it was unwilling to risk paying the $6,000 in taxes due in December 2017 to avoid Magnolia's sale of the tax certificate or the $25,000 necessary to redeem it before the trial court entered judgment in January 2019. Thus, that plaintiff could sell the property to Avi does not mean Sam's could have sold it to Avi or anyone else prior to resolution of the Pennsylvania litigation in October 2020, given the uncertainty surrounding its title.

Second, there is no doubt the Pennsylvania litigation was driving Sam's decision about paying the taxes due on the Magnolia property, which were current when it took title in 2016. Counsel flat out told the judge at argument on the summary judgment motion in late 2018 that "If we pay the taxes and

23

lose [the Pennsylvania action], then we're out another $50,000 [$25,000 on each of the Magnolia and Oaklyn properties]."  Sam's made it clear it did not want to risk throwing "good money after bad" in the event it paid the taxes and eventually lost the property.  Its counsel told the judge even before entry of the abandonment order that, "[w]e want to pay — we don't want to pay now."  As the judge distilled Sam's position, "[s]o it's sort of like you just want to hedge your bet — and see how things turn out in Bucks County."

The litigation confirming title to the Magnolia property in Sam's wasn't resolved, however, until October 2020, after our opinion vacating the judgment, reversing the abandonment order, and returning the case to the trial court.  Sam's, of course, could have simply redeemed the property at that point, the interest and costs of the redemption properly viewed as its hedge price for having plaintiff and Avi pay the taxes on the Magnolia parcel until Sam's title was secure.

The trial court provided Sam's over a year to redeem the property on remand.  But leaving aside Sam's erroneous belief that plaintiff's sale to Avi precluded its redemption of the certificate, Sam's objected to having to pay the interim assessed taxes and redemption costs "as if the foreclosure had been a

24

proper foreclosure and we had had title to the property for the — nearly three years now — when we haven't."

That proposition depends entirely, of course, on whether the property was appropriately deemed abandoned in 2018, an issue Sam's has plainly deemed in its interest to leave unresolved, notwithstanding our remand for its resolution. The third, and fatal, flaw in Sam's theory is that no court has ruled the original 2018 abandonment order on the Magnolia property was entered erroneously. Although we reversed the abandonment order in the Magnolia case, we did so for the court's failure to have held an evidentiary hearing on a contested record in the Oaklyn matter, thus making the finding in that case premature at best.

We excused Sam's failure to have filed opposition to plaintiff's application to declare the Magnolia property abandoned "because the judge's abandonment ruling in the Oaklyn matter demonstrated the futility of any opposition," leading us to "conclude . . . the abandonment determination in the Magnolia matter was also premature." US Bank Cust v. Block 64, No. A-2361-18 (slip op. at 9 n.3). If plaintiff could establish the property met the abandonment criteria in 2018, then plaintiff was not required to wait two years before filing to foreclose Sam's equity of redemption, and plaintiff did not sell

25

the Magnolia property post-judgment in 2019 when, Sam's alleges, "it had no right to do so."

Whether the abandonment order made the proceeding less than "a proper foreclosure" is precisely the issue we remanded for an evidentiary hearing over three years ago. Although it insisted to the trial court on remand that plaintiff's sale to Avi rendered an evidentiary hearing on the abandonment order "entirely moot" and it urged the court to dismiss the tax foreclosure without a ruling on the issue, Sam's now contends it never said it wouldn't participate in an evidentiary hearing and the trial court should not have cancelled the evidentiary hearing or entered the abandonment order on remand without one. We reject the argument as disingenuous.

We are sensitive to the potential abuse of the tax sale process by purchasers of tax sale certificates seeking to foreshorten the period the owner has to redeem the certificate by claiming the property abandoned. "The Tax Sale Law ensures 'the delinquent property owner's right to fair treatment in the collection of [delinquent property] taxes.'" Winberry Realty P'ship v. Borough of Rutherford, 247 N.J. 165, 185 (2021) (alteration in original) (quoting Varsolona, 180 N.J. at 622). "Although the primary purpose of the Tax Sale Law is to encourage the purchase of tax certificates, another

important purpose is to give the property owner the opportunity to redeem the certificate and reclaim his land." Simon v. Cronecker, 189 N.J. 304, 319 (2007); see 5 Powell on Real Property § 39.04 (explaining that "the paramount objective" of the tax sale process is the collection of delinquent payments "is underscored by the lengthy waiting periods from the initiation of the tax sale procedures to the final issuance of a tax deed conveying the property"). By shortening the period between its purchase of the tax sale certificate and institution of the foreclosure action, the commercial investor limits its own financial outlay in the form of taxes and possibly increases its chances that the property owner will not be able to work a solution to redeem the certificate before the entry of final judgment, allowing the investor to acquire the title.

Our concern that Sam's be provided the full period the Tax Sale Law allows prior to the filing of an action to foreclose the certificate, and the trial court's utter failure to have considered the condition of the Oaklyn residential property against the statutory criteria in deeming it abandoned, is what impelled us to remand this case concerning the Magnolia property — even though Sam's had not opposed plaintiff's application to declare the Magnolia property abandoned, and there was (and remains) nothing in the record to counter plaintiff's proofs that this long vacant commercial property with its

27

boarded and broken windows satisfied the abandonment criteria in 2018. The record on remand establishes plaintiff tried repeatedly to have the court convene an evidentiary hearing to allow it to establish the property's dilapidated condition in 2018, and Sam's repeatedly (and erroneously) countered that no hearing was necessary because the abandonment issue, along with the entire foreclosure action, was moot, or that it made no sense to have a hearing over property Sam's no longer owned.

Although Sam's blames the General Equity judge for her "seemingly inexhaustible supply of unexplained and inexplicable, mystifying rulings and orders," Sam's shares responsibility for the judge's failure to hold the evidentiary hearing on abandonment we ordered three years ago. See Brett v. Great Am. Rec., 144 N.J. 479, 503 (1996) (explaining "[e]lementary justice in reviewing the action of a trial court requires that that court should not be reversed for an error committed at the instance of a party alleging it") (quoting Bahrey v. Poniatishin, 95 N.J.L. 128, 133 (E. & A. 1920)).

And the reason for Sam's reluctance, if not refusal, to participate in our ordered evidentiary hearing is clear — dismissing the tax foreclosure action without resolving that issue permitted Sam's to continue to argue in the Law Division that plaintiff sold the Magnolia property to Avi when it had no right

to do so.  Although Sam's was resolute in not wanting to redeem the certificate and take back the property on remand, it opposed the entry of the second abandonment order — not for its effect on the tax foreclosure but because it undermined its theory of damages in the Law Division.

It is no doubt unusual for us to affirm a judgment on remand in which the trial court so misunderstood and ignored the law and our clear direction to hold an evidentiary hearing on a specific issue.[7]  See Flanigan v. McFeely, 20 N.J. 414, 420 (1956) (explaining "the trial court is under a peremptory duty to obey in the particular case the mandate of the appellate court precisely as it is written").  But having reviewed the entire record and heard oral argument, we are satisfied the trial judge's disregard of our prior decision is no reason to fail to recognize that affirming the tax judgment is the only just course here.

---

[7]  We harbor no similar objection to the judge's failure to have held an evidentiary hearing in the tax foreclosure on the Oaklyn property.  Once Sam's advised the court it was disclaiming any interest in that property, there was, of course, no point to a hearing on abandonment; the case was essentially over.  As plaintiff notes, however, Sam's concession in its counsel's December 1, 2020 letter to the trial court on remand, that "[t]wo years from the tax sale date [having] now long passed, . . . plaintiff can now foreclose as of right as to the Oaklyn property" and thus "a determination of abandonment by an evidentiary hearing is of no moment," is inconsistent with its position as to the Magnolia property on appeal.

A-2384-21

The law is well-settled that "[t]he collection of admittedly due taxes cannot . . . be permitted to rest with the unilateral business judgment of a taxpayer." West Orange v. Block 107, Lot 1, 162 N.J. Super. 314, 317 (App. Div. 1978). Sam's has never claimed it lacked the ability to pay its property taxes. The taxes on the Magnolia property were current when Sam's took title in 2016. Sam's could have paid the $6,000 due on its property taxes in December 2017 to have fended off Magnolia's sale of the tax certificate or paid the $25,000 necessary to redeem it from plaintiff when it filed its complaint to foreclose Sam's right of redemption. Sam's did neither of those things because, as it candidly admitted to the General Equity judge, it wasn't "sure how [the Pennsylvania fraud suit] was going to come out," and it did not want to throw "good money after bad" in the event it lost the Magnolia property in that litigation.

That commercial choice was obviously Sam's to make. But it must live with the consequences. As the Law Division judge readily grasped, Sam's "had essentially been using [plaintiff] as an involuntary bank to fund tax payments until [Sam's] decided whether it would redeem the tax lien" through its first appeal. Sam's has essentially sought to shield itself from its own costs in connection with the Magnolia property at plaintiff 's expense under a theory

30

that had plaintiff not prematurely filed its foreclosure complaint under the guise the property was abandoned, Sam's could've sold the property in 2019, paid the taxes and pocketed the profit, just as plaintiff did.

But having eschewed the remand hearing we ordered to establish whether the property was indeed in an abandoned state in 2018, Sam's cannot now be heard to complain that plaintiff wrongfully sold the property to Avi in May 2019 because Sam's should've been allowed until January 2020 to redeem — particularly as the Pennsylvania fraud suit that was driving Sam's decision to not pay its taxes was not resolved until October 2020.  Plaintiff's harm has been of its own making.  Having not availed itself of the relief we afforded it on remand — an extended period to redeem the tax certificate and a hearing to oppose plaintiff's proofs that the long vacant Magnolia property with its broken and boarded windows did not qualify as abandoned in 2018 — it cannot establish entitlement to the same relief on this appeal.

We affirm the tax sale foreclosure judgment vesting title to the Magnolia property in plaintiff, albeit for reasons different than those of the trial judge for the reasons explained.  See Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001) (noting "appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the

A-2384-21

ultimate conclusion").  Plaintiff may apply to the sitting General Equity judge

for an order in recordable form reflecting a concise procedural history of this

matter and title in plaintiff as a result of the tax sale judgment as affirmed in

this opinion, should plaintiff deem it necessary or advisable to resolve any

questions as to its title.[8]

    Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[8]  We offer this option because we do not know what the trial judge meant in her order of February 7, 2022, that "[t]he final judgment of foreclosure previously submitted and pending before the court remains as standing," and that "[t]his order may be recorded."

A-2384-21